**The STATE of Ohio, Appellee,**

v.

**SIFERD, Appellant.**

[Cite as *State v. Siferd,* 151 Ohio App.3d 103, 2002-Ohio-6801.]

Court of Appeals of Ohio,
Third District, Hancock County.

No. 5–02–09.

Decided Dec. 12, 2002.

Robert Fry, Hancock County Prosecuting Attorney, for appellee.

Angie Greene and Jerry L. McHenry, Assistant State Public Defenders, for appellant.

WALTERS, Judge.

{¶ 1} Defendant-appellant, Donald F. Siferd, appeals from a Hancock County Common Pleas Court judgment of conviction and sentence entered upon jury verdicts of guilt to one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1), and three counts of possession of cocaine, in violation of R.C. 2925.11(C)(4), stemming from his involvement with what is known as the Gonzalez family drug enterprise.

{¶ 2} Siferd claims that the failure to delineate the predicate offenses underlying the corrupt activity count in the indictment deprived him of due process of law. Although we find that due-process notice requirements mandate the

identification of the predicate offenses in the indictment, because Siferd failed to object to the omission, because he was sufficiently apprised of the charges, and because he has not demonstrated that he was misled or prejudiced thereby, we cannot find that any error related thereto was outcome-determinative. Siferd further argues that we should adopt the federal "operations and management test" for corrupt-activity convictions, averring that he took no part in the direction of the drug enterprise's affairs. Considering the statute's plain language and legislative history, we conclude that R.C. 2923.32(A)(1) proscribes the activity of those who neither manage nor supervise racketeering activity but nevertheless assist it. Finally, Siferd claims to be merely a victimized addict, asserting that the state failed to introduce sufficient evidence that he was "associated with" the criminal enterprise as contemplated by R.C. 2923.32. Having examined the record, we find this self-characterization to be untenable and hold that the evidence presented was sufficient to permit a rational trier of fact to find that the essential elements of the corrupt-activity offense had been proven beyond a reasonable doubt. Therefore, we affirm the judgment of the trial court.

{¶ 3} Facts and procedural posture relevant to issues raised on appeal are as follows. On May 27, 1998, the Memphis Police Department recovered over $190,000 from Trinidad David "Chico" Gonzalez during a search of his duffle bag on a Greyhound bus at a Memphis, Tennessee bus station. A police canine trained in detecting narcotics alerted to the odor of narcotics on the money. This money eventually became part of a multi-jurisdiction investigation into what is now known as the Gonzalez family drug ring. Over the course of the investigation, authorities discovered the existence of a large-scale drug enterprise covering multiple states, including Ohio, which engaged in the importation, distribution, and sale of substantial quantities of cocaine and marijuana. Although authorities identified Chico Gonzalez as the ringleader, the enterprise involved a significant number of individuals distributing illegal drugs throughout Hancock County, including, among others, Roger Gonzalez, Kelly Roberts, Juan Castillio, Brian Shetzer, Chad Valentine, William Maag, Robert Hernandez Jr., and Kandy Williams.

{¶ 4} In the latter part of 2000, the first indictments were returned and various arrests were made as a result of the Gonzalez drug ring investigation. On February 21, 2001, the Hancock County Grand Jury returned a four-count indictment against Siferd. Count one charged Siferd with engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1), a first-degree felony. The three remaining counts charged that he possessed varying amounts of cocaine, in violation of R.C. 2925.11(A), including possession of an amount of fewer than five

grams, a fifth-degree felony,[1] possession of an amount between five and twenty-five grams, a fourth-degree felony,[2] and possession of an amount between twenty-five and one hundred grams, a third-degree felony.[3]

{¶ 5} The case proceeded to a jury trial, from which verdicts of guilt were returned on all four counts. Siferd moved for a new trial, but the motion was overruled. Thereafter, the trial court sentenced Siferd to concurrent terms of imprisonment on each count for an aggregate total of five years. From the entry of conviction and sentence, Siferd appeals, presenting nine assignments of error for our review. For purposes of clarity, brevity, and logical progression, we have elected to address the assigned errors out of the order in which they were presented.

*Unindicted Predicate Offenses*

Fifth Assignment of Error

{¶ 6} "Appellant was deprived of due process of law and a fair trial when the State used unindicted offenses as predicate offenses for the racketeering charge. U.S. Const. Amend. VI, XIV; Ohio Const. Art. I, Sec. 10."

{¶ 7} R.C. 2923.32(A)(1) provides: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *." The elements of the offense are further defined in R.C. 2923.31, which provides:

{¶ 8} "(C) 'Enterprise' includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises.

{¶ 9} "* * *

{¶ 10} "(E) 'Pattern of corrupt activity' means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event. * * * For the purposes of the criminal penalties that may be imposed pursuant to section 2923.32 of the Revised Code, at least one of the

---

1. R.C. 2925.11(C)(4)(a).

2. R.C. 2925.03(C)(4)(b).

3. R.C. 2925.03(C)(4)(c).

incidents forming the pattern shall constitute a felony under the laws of this state in existence at the time it was committed[.]

{¶ 11} "* * *

{¶ 12} "(I) 'Corrupt activity' means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any of the following:

{¶ 13} "* * *

{¶ 14} "(2) Conduct constituting any of the following:

{¶ 15} "* * *

{¶ 16} "(c) Any violation of section * * * 2925.03 * * * of the Revised Code, any violation of section 2925.11 of the Revised Code that is a felony of the first, second, third, or fourth degree * * * when * * * value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds five hundred dollars * * *." [4]

{¶ 17} The statute defines "corrupt activity" as "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in * * * [c]onduct constituting" one of the predicate offenses listed in R.C. 2923.31(I)(2).[5] In this context, the statute also requires that to constitute "corrupt activity," the "proceeds of the violation" or "combination of violations" must be at least $500.[6]

{¶ 18} Although R.C. 2923.32(A)(1) convictions are dependent upon the presence of the requisite number of predicate offenses, the indictment does not specify which predicate offense or offenses listed in R.C. 2923.31(I)(2) comprise the instances of Siferd's "pattern of corrupt activity." Instead, the indictment merely alleges that from January 1, 1998, through August 29, 2000, Siferd, "being associated with an enterprise engaged in the sale and distribution of a controlled substance, to wit: Cocaine, did participate directly or indirectly in the affairs of said enterprise through a pattern of corrupt activity and the value of the contraband or other property illegally possessed, sold or purchased through the pattern of corrupt activity exceeds Five Hundred Dollars ($500.00) in violation of the Ohio Revised Code, Title 29, Section 2923.32(A)(1), and against the peace and dignity of the State of Ohio." While he was also indicted on three counts of knowingly possessing varying amounts of cocaine in violation of R.C.

---

4. R.C. 2923.31.

5. See, e.g., *State v. Schlosser* (1997), 79 Ohio St.3d 329, 335, 681 N.E.2d 911.

6. R.C. 2923.31(I)(2)(c).

2925.11(C)(4), those counts were not identified as predicate offenses for the R.C. 2923.32(A)(1) offense.

{¶ 19}   In its jury charge, the trial court instructed the jury that "incidents of corrupt activity need not be brought by the State of Ohio by way of formal criminal charges.   You may consider unindicted as well as indicted incidents so long as you determine in accordance with these instructions that such incidents occurred beyond a reasonable doubt and the combined proceeds of this illegal activity exceeded five-hundred ($500) dollars."   The court then proceeded to outline the elements necessary to prove the predicate offenses alleged by the State, specifically instructing as to the elements of unlawful funding of drug trafficking, in violation of R.C. 2925.05, trafficking of drugs, in violation of R.C. 2925.03, and possession of drugs, in violation of R.C. 2925.11.

{¶ 20}   Siferd argues that the state was required to indict him for the predicate offenses utilized to obtain the corrupt-activity conviction, arguing that the failure to indict him on charges of drug trafficking and funding of drug trafficking deprived him of the right to a proper grand jury indictment, to a fair trial, and to due process of law.   He maintains that the lack of an indictment as to these offenses prevented him from being informed of the charges against which he had to defend and that the potential for subsequent prosecution for the predicate offenses violates constitutional protections against double jeopardy.

{¶ 21}   As an initial matter, R.C. 2923.31(E) specifically provides that the "two or more incidents of corrupt activity" need not be supported by convictions themselves so long as it is proven beyond a reasonable doubt that such predicate acts occurred.[7]   Moreover, although the subsequent prosecution of unindicted predicate offenses has been held to be constitutionally permissible under appropriate circumstances,[8] because Siferd has not been subjected to further charges for the unindicted predicate acts, the issue of whether double jeopardy bars such action is not ripe for our review.   Therefore, our inquiry is limited to whether the state was required to delineate the predicate acts upon which the conviction for corrupt activity was sought in the indictment and, if so, whether the failure to do so amounts to reversible error.

{¶ 22}   An indictment serves two general purposes.   First, by identifying and defining the offenses of which the individual is accused, it protects

---

7.   See, e.g., *State v. Burkitt* (1993), 89 Ohio App.3d 214, 222–223, 624 N.E.2d 210, citing R.C. 2923.31(E);   *State v. McDay* (Sept. 20, 2000), Summit App. No. CA19610, 2000 WL 1349804, appeal not allowed (2001), 91 Ohio St.3d 1428, 741 N.E.2d 892;   *State v. Johnson* (Feb. 13, 1998), Darke App. Nos. 97 CA 1441 and 97 CA 1444, 1998 WL 57796

8.   See, e.g., *Garrett v. United States* (1985), 471 U.S. 773, 794–795, 105 S.Ct. 2407, 85 L.Ed.2d 764;   *State v. Ables* (La.App.2002), 829 So.2d 561.

against future prosecutions for the same offense.[9] Second, as a "[d]efendant is entitled to be apprised of the essential facts constituting the offense for which she is called upon to defend,"[10] the indictment "compels the government to aver all material facts constituting the essential elements of an offense, thus affording the accused adequate notice and an opportunity to defend."[11] Crim.R. 7(B) provides that the indictment shall contain a statement that the accused has committed a public offense as specified in the indictment "in ordinary and concise language without technical averments or allegations not essential to be proved. The statement may be in the words of the applicable section of the statute, provided the words of that statute charge an offense, or in words sufficient to give the defendant notice of *all the elements of the offense* with which the defendant is charged."[12] Generally, an indictment is sufficient if it recites the language of the relevant criminal statute.[13] The indictment must also "state the numerical designation of the statute that the defendant is alleged to have violated."[14] Crim.R. 7(D) provides for liberal amendments of the indictment if there has been any defect or imperfection unless it is clear that the accused has been misled or prejudiced by it. Crim.R. 7(E) further provides that the state, upon request, shall furnish the accused with a bill of particulars delineating the nature of the offense charged and the conduct alleged to constitute the offense.

■ {¶ 23} In *State v. Adkins*, we noted that the presence of the requisite number of predicate offenses comprising the pattern of corrupt activity was an essential element of R.C. 2923.32(A)(1) offenses.[15] Concomitantly, the Second Appellate District has determined that, "[a]s the state must rely on predicate acts to show a pattern under the corrupt activities statute, it must include notice of the acts sought to be proven in the indictment. Due process requires that an accused have notice of what acts the state will seek to prove to support a conviction."[16] Moreover, where unindicted offenses are utilized, the identification of the predicate acts in the indictment provides some assurance that the

---

9.  *State v. Childs* (2000), 88 Ohio St.3d 194, 198, 724 N.E.2d 781.

10. *State v. Wohlever* (1985), 27 Ohio App.3d 192, 193, 27 OBR 231, 500 N.E.2d 318.

11. *Childs*, 88 Ohio St.3d at 198, 724 N.E.2d 781, citing *State v. Sellards* (1985), 17 Ohio St.3d 169, 170, 17 OBR 410, 478 N.E.2d 781.

12. Emphasis added.

13. *Childs*, 88 Ohio St.3d at 199, 724 N.E.2d 781.

14. Crim.R. 7(B).

15. *State v. Adkins* (2000), 136 Ohio App.3d 765, 777, 737 N.E.2d 1021.

16. *Burkitt*, 89 Ohio App.3d at 224, 624 N.E.2d 210.

defendant was indicted on the same essential facts on which he was tried and convicted.[17] Applying these principles to the case at hand, in addition to the possession counts, Siferd was required to defend himself against charges of drug trafficking, in violation of R.C. 2925.03, and funding of drug trafficking, in violation of R.C. 2925.05. Therefore, he should have been so notified of such by identification of those charges as predicate offenses within the indictment.

{¶ 24} Siferd concedes, however, that he failed to lodge an objection to the indictment. Crim.R. 12(B)(2) requires that defenses and objections based on defects in the indictment be brought before trial.[18] "After the accused has pleaded to the indictment and the trial of the cause has begun, it is too late to raise objection to any faults in the indictment that amount to mere defects in the manner in which the offense is charged."[19] Accordingly, this court's discretionary review of the alleged error must proceed, if at all, under the plain error analysis of Crim.R. 52(B).[20] "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."[21] Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise.[22]

{¶ 25} The record in the instant cause does not meet the aforementioned criteria for a plain error or defect within the meaning of Crim.R. 52(B). The terms of the corrupt-activity count evidence that the state intended to establish that Siferd was being prosecuted for associating with and participating in an enterprise engaged in the sale and distribution of cocaine. The bill of particulars alleges that Siferd "engaged in violations of Ohio Revised Code, Sections 2925.05 [funding of drug trafficking] and 2925.11(A) [possession]" and provides a detailed recitation of the factual events underlying those allegations. Siferd lodged no objection when trafficking, funding, and possession were identified as the predicate offenses in the state's trial brief or when the jury was instructed as to these offenses. Furthermore, the state did not present evidence of or argue any

---

17. See Section 10, Article I, Ohio Constitution; *Harris v. State* (1932), 125 Ohio St. 257, 264, 181 N.E. 104.

18. *State v. Frazier* (1995), 73 Ohio St.3d 323, 332, 652 N.E.2d 1000.

19. *State v. Lee* (Mar. 25, 1992), Lorain App. No. 91CA005137, 1992 WL 64168, citing *Cincinnati v. Schill* (1932), 125 Ohio St. 57, 60, 180 N.E. 545.

20. *Frazier,* supra; *Burkitt,* 89 Ohio App.3d at 224, 624 N.E.2d 210.

21. *State v. Long* (1978), 53 Ohio St.2d 91, 97, 7 O.O.3d 178, 372 N.E.2d 804.

22. *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240.

predicate offenses other than possession, trafficking, or funding of trafficking. Because Siferd was sufficiently apprised of the charges against him and has not demonstrated that he was misled or prejudiced by the failure to define the predicate offenses in the indictment, we cannot find that but for the alleged error, the outcome of the trial clearly would have been otherwise. Accordingly, Siferd's fifth assignment of error is without merit.

## Operations and Management Test

### First Assignment of Error

{¶ 26} "Plain error occurred when the jury was not instructed that, to find the defendant guilty of O.R.C. 2923.32, it had to find that the defendant was part of the operations and management of the enterprise. U.S. Const. Amend. V, VI, VIII, IX, XIV, O.R.C. 2923.32, *Reves v. Ernst & Young*, 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993)."

### Second Assignment of Error

{¶ 27} "The evidence is insufficient as a matter of law to support a conviction of O.R.C. § 2923.32 because the defendant was not shown to be part of the operations and management of the enterprise. U.S. Const. Amend. V, VI, VIII, IX, XIV, O.R.C. § 2923.32, *Reves v. Earnst [Ernst] & Young*, 507 U.S. 170 [113 S.Ct. 1163, 122 L.Ed.2d 525] (1993)."

{¶ 28} As mentioned above, Siferd was convicted of engaging in a pattern of corrupt activity, a violation of R.C. 2923.32(A)(1), which provides: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." In his first assignment of error, Siferd argues that the trial court erred in instructing the jury that "[t]he phrase 'conduct or participate in, directly or indirectly,' is to be given ordinary meaning according to the usage of the English language." Citing the United States Supreme Court's interpretation and application of the federal Racketeer Influenced Corrupt Organizations "RICO" Act, Section 1961 et seq., Title 18, U.S.Code, in *Reves v. Ernst & Young*,[23] he claims that the instruction is erroneous because the words are meant to have a narrowing purpose. He requests that we adopt the operations and management test outlined in *Reves*, which requires that a person be found to have "participate[d] in the operation or management of the enterprise itself,"[24] and argues that criminal liability should be limited to the "brain trust" of the organization.

---

23. *Reves v. Ernst & Young* (1993), 507 U.S. 170, 177–178, 185, 113 S.Ct. 1163, 122 L.Ed.2d 525.

24. Id. at 183, 113 S.Ct. 1163, 122 L.Ed.2d 525.

{¶ 29}   In *State v. Davis*, the Ohio Supreme Court held meritless the appellant's argument that the trial court erred in failing to provide a limiting instruction.[25]   In doing so, the court stated: "Crim.R. 30(A) provides in relevant part:  'A party may not assign as error the giving or failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection.   Opportunity shall be given to make the objection out of the hearing of the jury.'   Having failed to request a limiting instruction, appellant has waived this issue for purposes of appeal." [26]   Similarly, Siferd failed to object to the challenged instruction at trial and has thus waived the issue for purposes of appeal, absent plain error.[27]   While we are mindful that courts are admonished to notice plain error "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice," [28] we will nevertheless proceed to review this assignment of error.

{¶ 30}   Ohio's Corrupt Activity Act, R.C. 2923.31 et seq., is patterned after the federal RICO Act and statutes passed by other states.[29]   In enacting the federal RICO Act, Congress found that "organized crime continues to grow" in part "because the sanctions and remedies available to the Government are unnecessarily limited in scope and impact." [30]   The activities allegedly embraced by criminal enterprises were simply too diverse to be tied together under existing conspiracy rationales, which were dependent upon the knowledge and agreement of all participants, on the theory that participation in one activity necessarily implied awareness of others.[31]   Through RICO, Congress intended to authorize the single prosecution of multi-faceted, diversified conspiracy by replacing the

---

**25.**   *State v. Davis* (1991), 62 Ohio St.3d 326, 581 N.E.2d 1362.

**26.**   Id. at 339, 581 N.E.2d 1362.

**27.**   Id. See, also *Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240;  *State v. Perry* (1992), 80 Ohio App.3d 78, 84, 608 N.E.2d 846.

**28.**   *Barnes*, 94 Ohio St.3d at 27, 759 N.E.2d 1240 (citations omitted).

**29.**   *State v. Thrower* (1989), 62 Ohio App.3d 359, 369, 575 N.E.2d 863;  *U.S. Demolition & Contracting, Inc. v. O'Rourke Constr. Co.* (1994), 94 Ohio App.3d 75, 83, 640 N.E.2d 235; *Universal Coach, Inc. v. New York City Transit Auth.* (1993), 90 Ohio App.3d 284, 291–292, 629 N.E.2d 28.

**30.**   Pub.L. 91–452, Section 1, 84 Stat. 922 (1970).

**31.**   *United States v. Elliott* (C.A.5, 1978), 571 F.2d 880, 902, certiorari denied, *Hawkins v. United States* (1978), 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344, and *Delph v. United States* (1978), 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344.

inadequate rationales with a new statutory concept: the enterprise.[32] "The substantive provisions of the RICO statute apply to insiders and outsiders, those merely 'associated with' an enterprise who participate directly and indirectly in the enterprise's affairs through a pattern of racketeering activity. Thus the RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise. * * * Direct evidence of agreement is unnecessary: 'proof of such an agreement may rest upon inferences drawn from relevant and competent circumstantial evidence, ordinarily the acts and conduct of the alleged conspirators themselves.' Additionally, once the conspiracy had been established, the government need show only 'slight evidence' that a particular person was a member of the conspiracy. Of course, a 'party to the conspiracy need not know the identity, or even the number, of his confederates.' " [33]

{¶ 31} Subsection 1962(c), the federal equivalent of R.C. 2923.32(A)(1), provides that "[i]t shall be unlawful for any person employed by or *associated with* any enterprise * * * *to conduct or participate, directly or indirectly*, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." [34] In *Reves,* the Supreme Court examined the meaning of "to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs," focusing its inquiry on the terms "conduct" and "participate." [35] Noting that the word "conduct" was used twice within the phrase, initially as a verb and then as a noun, the Supreme Court found that it "seem[ed] reasonable to give each use a similar construction." [36] The court surmised, "[u]nless one reads 'conduct' to include an element of direction when used as a noun in this phrase, the word becomes superfluous. Congress could easily have written 'participate, directly or indirectly, in [an] enterprise's affairs,' but it chose to repeat the word 'conduct.' We conclude, therefore, that as both a noun and a verb in this section 'conduct' requires an element of direction." [37]

{¶ 32} "The more difficult question [became] what to make of the word 'participate.' " [38] Having previously characterized the word as a "ter[m] . . . of breadth," the Supreme Court returned to its verb-tense construction of the use of the noun "conduct" to narrow the scope of the definition of "participate," holding that " 'to participate . . . in the conduct of . . . affairs' must be narrower than 'to

---

32. Id.

33. Id. at 903 (citations omitted).

34. Emphasis added.

35. *Reves,* 507 U.S. at 177–178, 113 S.Ct. 1163, 122 L.Ed.2d 525.

36. Id.

37. Id.

38. Id.

participate in affairs' or Congress' repetition of the word 'conduct' would serve no purpose." [39]   The court qualified this interpretation, indicating that "[o]f course, the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required." [40]   Since *Reves,* federal courts have often sought to emphasize the breadth of the "operation or management test." [41]

{¶ 33}   Turning to Ohio's Corrupt Activity Act, we begin with the axiomatic principle that when the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need for this court to apply the rules of statutory interpretation.[42]   "In such a case, we do not resort to rules of interpretation in an attempt to discern what the General Assembly could have conclusively meant or intended in * * * a particular statute—we rely only on what the General Assembly has actually said." [43]   "Where a statute is found to be subject to various interpretations, however, a court called upon to interpret its provisions may invoke rules of statutory construction in order to arrive at the legislative intent." [44]   If interpretation is necessary, the General Assembly has expressly provided that courts should interpret statutory terms and phrases according to their common and ordinary (or, if applicable, technical) usage.[45]

{¶ 34}   Unlike the federal RICO act, the Ohio legislature chose not to repeat the word "conduct" in R.C. 2923.32(A)(1).   Instead, the phrase "participate in, directly or indirectly, the affairs of the enterprise" was adopted.   The Supreme Court recognized in *Reves* that Congress could "easily" have utilized nearly identical language—"participate, directly or indirectly, in [an] enterprise's affairs"—to support a more expansive application.[46]   Indeed, the plain meaning of

---

**39.** Id. (ellipses sic).

**40.** Id.

**41.** E.g., *Aetna Cas. Sur. Co. v. P & B. Autobody* (C.A.1, 1994), 43 F.3d 1546, 1559–1560.

**42.** *State ex rel Jones v. Conrad* (2001), 92 Ohio St.3d 389, 392, 750 N.E.2d 583 (citations omitted).

**43.** Id., citing *Muenchenbach v. Preble Cty.* (2001), 91 Ohio St.3d 141, 149, 742 N.E.2d 1128 (Moyer, C.J., dissenting).

**44.** *Meeks v. Papadopulos* (1980), 62 Ohio St.2d 187, 190, 16 O.O.3d 212, 404 N.E.2d 159.

**45.** R.C. 1.42.

**46.** *Reves,* 507 U.S. at 177–178, 113 S.Ct. 1163, 122 L.Ed.2d 525.

"participate," commonly understood as "tak[ing] part in" an enterprise's affairs,[47] dictates that R.C. 2923.32(A)(1) was not intended to be limited to those who have directed the pattern of corrupt activity. The precise language of the statute clearly encompasses those who have performed activities necessary or helpful to the operation of the enterprise, whether directly or indirectly, without an element of control.[48]

{¶ 35} Moreover, in *State v. Schlosser*, the Ohio Supreme Court recognized that the Ohio and federal statutes are distinguishable, refusing to adopt federal case law requiring a knowing or reckless mental state for RICO violations, i.e., that the accused "objectively manifest * * * an agreement to participate in the conduct of the affairs of the enterprise through the commission of two or more predicate crimes."[49] In doing so, the court examined available state and federal legislative history and the terms of the Ohio statute to ascertain the appropriate mental state for R.C. 2923.32(A)(1) convictions. Noting that the Ohio General Assembly unanimously passed the Ohio RICO Act in 1985, the court quoted Senator Eugene Watts, the statute's Senate sponsor, who described the statute as "the toughest and most comprehensive [RICO] Act in the nation" and "state-of-the-art legislation."[50] The court found that offenses under Ohio's RICO Act were made unlawful for the good of the public welfare and were intended to enhance the government's ability to quell organized crime.[51]

{¶ 36} Turning to the context of the statute, the court acknowledged that merely committing successive related crimes was not sufficient to rise to the level of a RICO violation, that both the federal and Ohio statutes attempt to prohibit an enterprise, and that "[t]o obtain convictions, [the state] had to prove that each defendant was voluntarily connected to that pattern and performed at least two acts in furtherance of it."[52] However, the court rejected the notion that the government must prove that the accused objectively manifested an agreement to participate in the conduct of the affairs of the enterprise or recklessly engage in a

---

**47.** Webster's Third New International Dictionary (1976) 1646.

**48.** Cf. *Cincinnati Gas & Elec. Co. v. Gen. Elec. Co.* (S.D.Ohio 1986), 656 F.Supp. 49, 86–87.

**49.** *Schlosser*, 79 Ohio St.3d at 333–334, 681 N.E.2d 911, quoting *United States v. Martino* (C.A.5, 1981), 648 F.2d 367, 394.

**50.** Id. at 333, 681 N.E.2d 911, citing 57 Ohio Report No. 117, Gongwer News Serv. (June 18, 1985), at 3.

**51.** Id.

**52.** Id., quoting *United States v. Palmeri* (C.A.3, 1980), 630 F.2d 192, 203.

pattern of corrupt activity as a predicate to criminal liability. The court differentiated Ohio's statute by its use of the phrase "pattern of corrupt activity," defined as meaning "two or more incidents of corrupt activity * * * that are related to the affairs of the same enterprise," concluding that "[t]he *pattern* of corrupt activity is demonstrated by the fact that the appellee *committed* the predicate offense. The General Assembly has determined that if a defendant has engaged in two or more acts [related to the same enterprise] constituting a predicate offense, he or she *is engaging in a pattern* of corrupt activity and may be found guilty of a RICO violation."[53] The court found that "the plain language of the statute, the legislative intent and public policy considerations behind that statute, and the varying culpable mental states necessary for the predicate offenses, unequivocally indicate a purpose to impose strict liability for the conduct described in the section."[54]

{¶ 37} Since the operations and management test would impose an element of knowledge into what was determined to be a strict liability offense, we find it noteworthy that *Schlosser* declined to address *Reves*. As discussed above, R.C. 2923.32(A)(1) seeks to impose additional liability for those who "participate in, directly or indirectly," the affairs of a criminal enterprise through a pattern of corrupt activity involving said enterprise.[55] Considering the plain language of the statute and the legislative intent and public policy considerations behind Ohio's Corrupt Activity Act, we conclude that the activity of those who do not manage or supervise racketeering activity, but nevertheless assist it, is inimical to the interests identified and see no reason why the legislature would limit liability to those who control the enterprise.[56] We hold that participatory conduct or activities may be found in acts that are below the managerial or supervisory level and do not exert control or direction over the affairs of the enterprise. Therefore, we do not find that the trial court erred in instructing the jury that "[t]he phrase 'conduct or participate in, directly or indirectly,' is to be given ordinary meaning according to the usage of the English language." Accordingly, Siferd's first assignment of error is overruled. Furthermore, having concluded that it was not necessary to prove that Siferd had some part in directing the enterprise's affairs, we additionally find that his second assignment of error lacks merit.

---

53. Id. at 335, 681 N.E.2d 911 (emphasis added).

54. Id. at 331–332, 681 N.E.2d 911.

55. Id. at 335, 681 N.E.2d 911.

56. See *State v. Ball* (1995), 141 N.J. 142, 173–74, 661 A.2d 251, certiorari denied, *Mocco v. New Jersey* (1996), 516 U.S. 1075, 116 S.Ct. 779, 133 L.Ed.2d 731.

*Sufficiency of the Evidence—Status as Mere User*

Third Assignment of Error

{¶ 38} "The evidence is insufficient as a matter of law to support a conviction of O.R.C. 2923.32 because the defendant was not employed by or associated with the enterprise. U.S. Const. Amend. V, VI, VIII, IX, XIV, O.R.C. § 2923.32."

Fourth Assignment of Error

{¶ 39} "The Trial Court erred in overruling the Defendant's Rule 29 Motion because the evidence is insufficient to support a conviction on all counts. U.S. Const. Amend. VI, XIV, Crim.R. 29, Ohio Const. Art. I, Sec. 10."

{¶ 40} We begin our analysis of Siferd's third and forth assignments of error by setting forth the applicable standards of review. According to Crim.R. 29(A), "[t]he court on motion of a defendant or on its own motion, after the evidence on either side has closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." In reviewing a trial court's decision on a motion for acquittal, this court is bound to follow the standard of review announced in *State v. Bridgeman*, which provides: "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt." [57]

{¶ 41} The *Bridgeman* standard, however, must also be viewed in light of the test for sufficiency of the evidence.[58] This test was set forth in *State v. Jenks:* "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." [59]

{¶ 42} Within the assigned errors, Siferd asserts that the state failed to prove that he was "employed by or associated with" the Gonzalez drug enterprise. Although Siferd concedes the enterprise's existence and acknowledges that its

57. *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184.

58. *State v. Foster* (Sept. 17, 1997), Seneca App. No. 13–97–09, 1997 WL 576353.

59. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

goal was the importation, distribution, and sale of narcotics, he avers that he "could not be employed by or associated with the Gonzalez enterprise because he was the market for the enterprise" and that his activity, even if illegal, was merely of peripheral benefit and is insufficient to support RICO liability. He maintains that "[n]o evidence in this case indicates that [he] had any commonality of purpose with the drug dealers, or that anyone in the organization took direction or orders from him, or that he had any stake in the proceeds of the organization, or that he made any money off the drug deals." Siferd characterizes himself as "nothing more than a drug addict who spent all he had on his cocaine addiction," concluding that "Ohio RICO was never meant to reach these facts." He argues that certain enterprise associates' lack of familiarity with him and the absence of a police-conducted purchase from him, demonstrate that he was simply a habitual user. Siferd contends that the trial court erred in failing to enter a judgment of acquittal because no reasonable mind could find an association, either direct or indirect, or a pattern of corrupt activity.

{¶ 43} Federal and state courts have generally defined the concept of being "associated with" an enterprise within the overall context of the statute, often concluding that a defendant has "associated with" an enterprise when he or she has "participate[d] in, directly or indirectly, the affairs of the enterprise." [60] In *Schlosser*, the Ohio Supreme Court described the level of association necessary to support an R.C. 2923.32(A)(1) conviction in a broad sense, indicating that the state "had to prove that each defendant was *voluntarily connected* to the pattern [of corrupt activity comprising the enterprise], and performed two or more acts in furtherance of it."[61] Again, "the RICO net is woven tightly to trap even the smallest fish, those peripherally involved with the enterprise. * * * Direct evidence of agreement is unnecessary: 'proof of such an agreement may rest upon inferences drawn from relevant and competent circumstantial evidence, ordinarily the acts and conduct of the alleged conspirators themselves.' Additionally, once the conspiracy had been established, the government need show only 'slight evidence' that a particular person was a member of the conspiracy. Of course, a 'party to the conspiracy need not know the identity, or even the number, of his confederates.' " [62]

{¶ 44} As predicate acts for the corrupt activity offense, Siferd was alleged to have possessed cocaine, in violation of R.C. 2925.11, trafficked cocaine, in violation

---

**60.** See *State v. Hughes* (Mar. 13, 1992), Miami App. No. 90–CA–54, 1992 WL 52473 (citations omitted); R.C. 2923.32(A)(1).

**61.** *Schlosser,* 79 Ohio St.3d at 334, 681 N.E.2d 911 (emphasis added), quoting *Palmeri,* 630 F.2d at 203.

**62.** *Elliott,* 571 F.2d at 903 (citations omitted).

of R.C. 2925.03, and funded cocaine trafficking, in violation of R.C. 2925.05. R.C. 2925.11(A) provides that a person who knowingly obtains, possesses, or uses cocaine or a compound, mixture, preparation, or substance containing cocaine, is guilty of possession of cocaine. "Possess" or "possession" means having control over a thing or substance.[63] Possession of cocaine in any amount is a felony. R.C. 2925.03(C)(4) provides that a person who knowingly sells or offers to sell cocaine or a compound, mixture, preparation, or substance containing cocaine, is guilty of trafficking in cocaine. "Sale" includes the delivery, barter, exchange, transfer, or gift, or offer thereof, and each transaction of those natures.[64] Trafficking in cocaine in any amount is a felony.

{¶ 45} At trial, Chad Valentine, Brian Shetzerm, and Nicole Cramer, Roger Gonzalez's girlfriend, among others, testified pursuant to plea agreements with the state regarding their participation in the Gonzalez family drug ring. Through Valentine, Shetzer, and Cramer's testimony, the state presented evidence of the drug ring's operations and structure. Chad Valentine indicated that he began purchasing ounces of cocaine and pounds of marijuana from Roger Gonzalez in 1995. After Roger Gonzalez's release from prison in 1999, Valentine began setting up transactions, transporting drugs and money, and selling cocaine and marijuana for the ring. Valentine testified that Roger's brother, Chico Gonzalez, maintained a drug supply from Chicago, and Roger's cousin provided a supply from Adrian, Michigan. Roger, with the assistance of Valentine, Brian Shetzer, and Ryan Black, would then front the drugs to other dealers in Findlay, who would then sell smaller quantities to other users or dealers and then repay Roger with the proceeds. Although Valentine had not met Siferd prior to trial, he testified that Robert Hernandez Jr. had informed him that Siferd had fronted him money to purchase cocaine.

{¶ 46} Shetzer testified that he was Roger Gonzalez's right-hand man from 1999–2000, often conducting drug runs to Florida, Michigan, Illinois, and Toledo, Ohio, with and for Roger. Shetzer also identified several participants and their respective roles in the Gonzalez family drug dealings, including Mike Harpe, Chad Valentine, Rick Dietrick, Tom Maag, Robert Hernandez Jr., and Juan Castillo. Shetzer indicated that he regularly sold or fronted cocaine to Robert Hernandez Jr. and his wife, Kandy Williams. Shetzer testified that he became acquainted with Siferd through Greg Shumaker, Robert Hernandez Jr., and his brother, Joey Hernandez, in late 1999. He reported that he sold Siferd drugs on several occasions and witnessed him smoking the drugs in his basement but did not know whether Siferd was also selling drugs.

---

63. R.C. 2925.01(K).

64. R.C. 2925.01(A); 3719.01(AA).

{¶ 47} To illustrate Siferd's level of involvement with the drug operation, the state introduced the testimony of Kandy Williams and her husband, Robert Hernandez Jr. Kandy testified that Siferd was introduced to the couple by Julie Taylor, an apparent paramour, in 1998. He originally purchased eight balls (three and one-half grams) of cocaine from Kandy Williams through Taylor several times per week. Roughly three weeks after the initial sale, Williams met Siferd and began selling cocaine directly to him, varying in amounts from a quarter ounce to an ounce. Williams indicated that Siferd would often contact her from work and tell her that he was interested in purchasing an eight ball, of which he would allocate the cost and redistribute a portion of the cocaine to an unidentified purchaser. Williams reported that on one occasion Siferd purchased an entire ounce (approximately twenty-eight grams) of cocaine under this arrangement. She further testified to three or four occasions when she delivered cocaine to Siferd, and he would complain that the party to whom he was distributing the cocaine was becoming impatient and immediately leave the residence. Finally, Williams testified that Siferd had fronted her husband money to purchase cocaine in return for disbursements of cocaine or cash over subsequent weeks.

{¶ 48} Robert Hernandez Jr. testified that he had previously dealt directly with Chico Gonzalez, who would front him an ounce at a time. He and his wife subsequently acquired their cocaine supply directly from Rick Dietrick, his brother, Joey Hernandez, and Brian Shetzer, who Robert knew was working for Roger Gonzalez, or through trips he made with Shetzer to Toledo. Robert indicated that he was fronted cocaine from Roger Gonzalez on an arrangement identical to that which he had with Chico Gonzalez. He testified that he sold cocaine to Siferd on several occasions and corroborated that Siferd was purchasing quantities of up to a half-ounce anywhere from twice a week to twice a night. Robert further confirmed that on two occasions Siferd had fronted him money, through Taylor, to purchase an entire ounce of cocaine at a discounted price. In return, Siferd would receive a flow of cocaine, including an eight ball or two per week for free. When cocaine was unavailable through Robert or Kandy, Siferd offered to supply Robert cocaine from a source in Michigan.

{¶ 49} In addition to the testimony of these witnesses, the state presented numerous exhibits concerning controlled buys of drugs from members of the Gonzalez family drug ring and searches made by law enforcement personnel. The state also called many law enforcement officers involved in the investigation of the drug ring to testify about the discoveries made during the investigation. Agent Mark Apple of the Bureau of Criminal Investigation and Identification testified about the Gonzalez drug enterprise investigation and how he became involved in an undercover capacity. Apple indicated that as a part of his

investigation, he made controlled cocaine purchases from Brian Shetzer, Greg Shumaker, Mike Harpe, and Roger Gonzalez. By the conclusion of the trial, the state had presented the testimony of fourteen witnesses and had forty-five exhibits admitted into evidence.

{¶ 50} Considering the testimony and evidence presented, we find Siferd's characterization of his interaction with the Gonzalez drug ring as merely a victimized addict to be untenable. Siferd concedes and ample evidence supports that he possessed varying amounts of cocaine on numerous occasions. By his own admission, he had purchased in upwards of $100,000 of cocaine in the year preceding his arrest. Although Siferd claims that "[n]o one ever alleged that [he] sold any drugs, nor was proof offered at trial," his admissions to co-conspirators within the Gonzalez drug ring, including his resale of cocaine, offer to supply them drugs, and the volume of his purchases, provide sufficient evidence to support a finding, beyond a reasonable doubt, that he engaged in multiple trafficking offenses and that he possessed the drugs for both personal use and trafficking purposes. The fact that Siferd did not interact with or was unknown to certain enterprise associates or that the motive for his conduct may have been his addiction to cocaine will not insulate him from criminal liability under Ohio's Corrupt Activity Statute.[65] While we recognize that RICO statutes were not intended to reach the victims of criminal activity, because evidence in the record demonstrates that Siferd's involvement in the criminal enterprise exceeded that of a passive user, we need not reach the issue of whether a habitual drug user who engages in a pattern of purchases from an established drug enterprise is merely a victim for purposes of Ohio's Corrupt Activity Act.

{¶ 51} Therefore, having examined the evidence admitted at trial in a light most favorable to the prosecution, we find that such evidence was sufficient to permit a rational trier of fact to find that the essential elements of the trafficking, possession, and corrupt-activity offenses had been proved beyond a reasonable doubt. Furthermore, we do not find that the trial court erred overruling his Crim.R. 29 motion for judgment of acquittal. Accordingly, we overrule Siferd's third and fourth assignments of error.

### Constitutionality of R.C. 2923.32

### Sixth Assignment of Error

{¶ 52} "O.R.C. § 2923.32 is unconstitutional because it is vague both on its face and as applied to appellant. U.S. Const. Amend. VIII, XIV; O.R.C. § 2923.32."

---

65. *State v. Owen* (Feb. 19, 1999), Miami App. No. 98 CA 17, 1999 WL 76826 (additional history omitted).

{¶ 53}  In his sixth assignment, Siferd contends that R.C. 2923.32 is unconstitutionally vague on its face and as applied to him.  The question of the constitutionality of a statute must generally be raised in the trial court.[66]  The record reveals that Siferd did not raise the constitutionality of this statute at the trial court level.  In *State v. Awan*, the Ohio Supreme Court held that "[f]ailure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal." [67]  This rule applies both to Siferd's claim that the statute is unconstitutionally vague on its face and as applied to him.[68]  Both claims were apparent but yet not made before the trial court.  Additionally, we note that Ohio courts have uniformly rejected vagueness challenges to this statute.[69]  As discussed in the preceding assignments of error, the terms "participate in" and "affairs of the enterprise" are terms subject to their ordinary meaning according to their common usage, which, in the context of the statute, sufficiently apprise persons of ordinary intelligence of what conduct would violate the statute.  Accordingly, Siferd's sixth assignment of error is overruled.

*Juror Questions*

Ninth Assignment of Error

{¶ 54}  "The Trial Court committed plain error when it allowed the jurors to pose questions to the witnesses.  U.S. Const. Amend. V, VI, XIV."

{¶ 55}  In his ninth assignment of error, Siferd contends that it was plain error for the trial court to permit the jurors to ask questions of various witnesses.  The record reveals that during the course of the trial, the court permitted the jury to submit written questions for the witnesses.  After allowing both sides to review and making a ruling as to the propriety of a proposed question, the court would read it aloud to the witness.  Both the prosecuting attorney and defense counsel then had the opportunity to ask limited followup questions depending upon the witness's answer.

---

66.  *State v. 1981 Dodge Ram Van* (1988), 36 Ohio St.3d 168, 170, 522 N.E.2d 524.

67.  *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, at syllabus.

68.  See, e.g., *1981 Dodge Ram Van,* supra.

69.  See *Thrower,* 62 Ohio App.3d at 371–372, 575 N.E.2d 863; *Hughes,* supra.

{¶ 56} As thoroughly discussed in *State v. Cobb*, we find the decision to permit jurors to ask questions of witnesses to be ill-advised and discourage the practice in all trial settings.[70] Nevertheless, "an appellant must demonstrate resulting prejudice in order for a reviewing court to overturn a judgment based upon the trial court's decision to allow jurors to question the witnesses."[71] Siferd cannot satisfy this burden. Although we do not consider the precautionary measures taken by the trial court to be infallible, Siferd does not direct us to any supporting evidence, and the record herein does not indicate that the jurors were prejudicially influenced by or displayed any overt bias during this procedure. Moreover, we do not find that the actual questions put forward reflect such prejudicial attitudes so as to necessitate a reversal. Therefore, while we again reiterate our aversion to this practice, we must overrule Siferd's ninth assignment of error.

## Motion for New Trial

### Eighth Assignment of Error

{¶ 57} "The Trial Court erred in overruling the Defendant's Motion for a New Trial."

{¶ 58} For his eighth assignment of error, Siferd argues that the trial court erred in failing to order a new trial, contending that the verdict was contrary to law, the evidence insufficient to support his convictions, and that the use of unindicted predicate acts was in error. In support thereof, he reiterates and incorporates by reference arguments presented with his first, second, and fifth assignments of error. Considering our disposition of the aforementioned assignments of error, we find these contentions to be meritless and, accordingly, overrule his eighth assignment of error.

## Ineffective Assistance of Counsel

### Seventh Assignment of Error

{¶ 59} "Trial counsel rendered ineffective assistance of counsel in failing to preserve issues for appeal. U.S. Const. Amend. VI, XIV."

{¶ 60} For his seventh assignment of error, Siferd claims that his trial counsel was ineffective for failing to move for dismissal of the corrupt activity

---

70. *State v. Cobb* (July 24, 2000), Seneca App. No. 13–2000–07, 2000 WL 1049308.

71. Id., citing *State v. Stanton* (1968), 15 Ohio St.2d 215, 44 O.O.2d 191, 239 N.E.2d 92, paragraph two of the syllabus.

charge, to object to the use of unindicted offenses, or to object to the jury's being instructed that "[t]he phrase 'conduct or participate in, directly or indirectly,' is to be given ordinary meaning according to the usage of the English language." In support thereof, Siferd refers this court to the substantive arguments presented in support of his preceding assignments of error and requests that his conviction be reversed and a new trial granted.

{¶ 61} An ineffective-assistance-of-counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result.[72] To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different.[73] "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial.[74] In light of our disposition of the preceding assignments of error, we cannot find that there is a reasonable probability that the claimed deficiencies would have changed the result of the trial.

{¶ 62} Accordingly, Siferd's seventh assignment of error is overruled.

{¶ 63} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Hancock County Common Pleas Court.

Judgment affirmed.

SHAW, P.J., and THOMAS F. BRYANT, J., concur.

---

72. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus.

73. Id. at paragraph three of the syllabus.

74. *State v. Waddy* (1992), 63 Ohio St.3d 424, 433, 588 N.E.2d 819.