[Cite as *State v. Fetter*, 2013-Ohio-4640.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                 CASE NO.  2-13-12

      v.

BRANDON R. FETTER,                  **O P I N I O N**

      DEFENDANT-APPELLANT.

---

**Appeal from Auglaize County Common Pleas Court**
**Trial Court No. 2012-CR-141**

**Judgment Affirmed**

**Date of Decision:  October 21, 2013**

---

APPEARANCES:

      *S. Mark Weller*  for Appellant

      *R. Andrew Augsburger*  for Appellee

**ROGERS, J.**

{¶1} Defendant-Appellant, Brandon Fetter, appeals the judgment of the Court of Common Pleas of Auglaize County convicting him of aggravated vehicular homicide and sentencing him to a seven-year prison term. On appeal, Fetter argues that the trial court improperly excluded evidence that the victim, Michael Ford, was not wearing a seatbelt at the time of the automobile accident that took his life. For the reasons that follow, we affirm the trial court's judgment.

{¶2} On August 9, 2012, the Auglaize County Grand Jury indicted Fetter with the following: (1) Count I – aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a), (B)(2)(a), a felony of the second degree; (2) Count II – operating a vehicle under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree; and (3) Count III – operating a motor vehicle under the influence of alcohol in violation of R.C. 4511.19(A)(1)(b), a misdemeanor of the first degree. The indictment arose from a February 1, 2012 automobile accident on State Route 117 in eastern Auglaize County. Fetter was driving his automobile northbound around 10:25 p.m. when his car went into the southbound lane and struck Ford's vehicle. As a result of the accident, Ford sustained fatal injuries and subsequently died while Fetter sustained less serious injuries.

{¶3} The trial of this matter commenced on January 7, 2013 and continued through January 10, 2013. At trial, the following relevant evidence was adduced.

{¶4} Jeb Sheidler, an off-duty trained paramedic, testified regarding his treatment of Ford at the accident scene. Sheidler found Ford slumped over the front seat of the vehicle. When Sheidler first arrived, he felt a carotid pulse, but after several resuscitation attempts, Ford's pulse was non-existent before being placed into an ambulance.

{¶5} On cross-examination, Sheidler discussed the placement of the seatbelt in Ford's automobile:

Q:    Do you know if somebody took his seatbelt off or do you know if he was wearing his seatbelt?

A:    I have no idea.

Q:    It just wasn't in place when you got there?

A:    Correct.

Trial Tr., p. 57.

{¶6} Cheryl Jerew, the Wayne Township EMS chief, testified regarding her response to the accident scene. She was involved in removing Fetter from his automobile. In doing so, Chief Jerew asked Fetter whether he had been drinking alcoholic beverages before the accident. According to her, Fetter "indicated that he had been drinking and he had quite a bit to drink." *Id*. at p. 67.

**{¶7}** Sergeant John Westerfield of the Ohio State Highway Patrol testified regarding his response to the accident scene. He indicated that he interviewed Fetter about the accident. Sergeant Westerfield generally described Fetter's responses during the interview as follows:

> There were a lot of incidents where he couldn't recall. There was some that he could. Basically, he left his uncle's house, was on State Route 117 going to his residence on Fairmount Road. That he did make the left turn. He was aware there were headlights coming towards him, but there were other questions that I asked that he couldn't recall specifics to.

*Id*. at p. 76. When asked about the distance of the oncoming headlights, Fetter told Sergeant Westerfield that "[i]t was either twenty (20) to fifty feet (50') or thirty (30) to fifth feet (50')." *Id*. at p. 77. Sergeant Westerfield also asked Fetter whether he had consumed alcoholic beverages before the accident:

> Q: What was his comment about consuming alcohol?
>
> A: That he did consume alcohol. I believe he had four (4), he said standard size cups of I believe eighty (80) proof rum that was mixed with some other Ginger Ale, some other nonalcoholic beverages.
>
> Q: Did he make any comments to you about being under the influence?
>
> A: Yes, he did.
>
> Q: What did he say?
>
> A: He said he was slightly buzzed. I don't know exact wording without my statement, but basically that he was slightly buzzed or slightly impaired. But, he wasn't seeing double or things weren't spinning.

*Id.*

**{¶8}** Sergeant Westerfield explained that he took the statement when Fetter was receiving treatment in the Lima Memorial Hospital's emergency department. At the time, Fetter was strapped onto a backboard with a c-collar around his neck. Sergeant Westerfield testified that during the course of the interview, he could smell the odor of alcoholic beverage on Fetter's breath. After the interview and recording Fetter's responses to his questions, Sergeant Westerfield gave Fetter the opportunity to review his statements. Fetter reviewed the statements and agreed that they were accurately recorded. Sergeant Westerfield additionally indicated that he obtained a blood sample with Fetter's consent from hospital staff at approximately 1:30 a.m., three hours after the accident.

**{¶9}** Mark Hiatt, the laboratory supervisor for the Ohio State Highway Patrol Crime Lab's drug chemistry division, testified regarding the tests he performed on the blood sample collected from Fetter. The tests revealed a blood alcohol content of 0.155 grams by weight of alcohol per 100 milliliters of whole blood. Dr. Robert Forney then offered his expert opinion that the results of the blood tests indicated that Fetter was "significantly impaired by the alcohol in his system" around the time of the accident. *Id*. at p. 134. Dr. Forney testified that the alcohol would particularly affect his depth perception while driving.

{¶10} Dr. Thomas Freytag, the Auglaize County Coroner, testified that he declared Ford dead at the accident scene around 10:50 p.m. He identified the cause of death as multiple blunt force trauma occurring from the accident.

{¶11} Sergeant Ed Magoto of the Ohio State Highway Patrol, an accident scene reconstructionist, testified regarding his investigation of the accident scene and resultant conclusions. He determined that the accident occurred when Fetter was turning left onto Fairmount Road. During the turn, Fetter's automobile collided with Ford's automobile at a 29 degree angle. Sergeant Magoto estimated that at the time of impact, Fetter's car was traveling approximately 18 miles per hour while Ford's automobile was traveling approximately 43 to 48 miles per hour. Based on these calculations and observations, Sergeant Magoto testified that Fetter's failure to yield the right of way when turning left caused the accident. After Sergeant Magoto's testimony, the State rested.

{¶12} After the State rested, Fetter moved for an acquittal pursuant to Crim.R. 29. During the course of arguing his position, Fetter's defense counsel asserted that the evidence established that Ford was not wearing a seatbelt at the time of the accident, which broke the causal connection between Fetter's conduct and Ford's death. The trial court denied Fetter's motion.

{¶13} The trial court subsequently heard more argument regarding the introduction of evidence that Ford was not wearing his seatbelt at the time of the

accident. Based on its consideration of the case, the trial court ordered "that all evidence concerning the decedent maybe having failed to wear a seat belt restraint is stricken." *Id.* at p. 389. Subsequently, the trial court instructed the jurors as follows:

> [I]n this case there has been some evidence that the decedent may have failed to wear a seatbelt restraint at the time of the crash. Ohio Revised Code Section 4513.263(F)(1) specifies that evidence of that failure shall not be admissible as evidence in a criminal action with one exception that does not apply here. Therefore, you are instructed that the court has stricken all evidence concerning that matter and you must treat it as though you never heard it and you must not consider it for any reason. You are so instructed.

*Id.* at p. 395-96.

{¶14} In his defense, Fetter called his uncle, Todd Fetter ("Todd"), who testified that he did not see Fetter drinking alcoholic beverages on the night of the accident. Todd also indicated that he did not perceive Fetter to be under the influence of alcohol before leaving his residence.

{¶15} Fetter also called Bryce Adams, an expert accident scene reconstructionist. He concluded that Ford was driving 65 miles per hour before the accident, which meant that Ford had about 1.6 seconds to react to Fetter's vehicle coming into the southbound lane. Adams additionally concluded that Ford had 38 feet to avoid the collision.

{¶16} After presenting his evidence, Fetter rested and renewed his Crim.R. 29 motion, which was again denied. The parties then addressed jury instructions.

Fetter again objected to a jury instruction that precluded consideration of the evidence relating to Ford's seatbelt. The trial court, however, overruled the objection.

{¶17} The jury returned guilty verdicts on all three counts alleged in the indictment. This matter then proceeded to sentencing. At the sentencing hearing on February 28, 2013, the State elected to proceed with sentencing on the one count of aggravated vehicular homicide. Meanwhile, the two OVI counts were merged into the aggravated vehicular homicide count for the purposes of sentencing. The trial court subsequently sentenced Fetter to a seven-year prison term. On March 4, 2013, the trial court issued a judgment entry journalizing Fetter's conviction and sentence.

{¶18} Fetter timely appealed this judgment, presenting the following assignment of error for our review.

### Assignment of Error

**THE APPELLANT WAS DENIED HIS RIGHT TO PRESENT A FULL DEFENSE WHEN THE TRIAL COURT WOULD NOT ALLOW HIM TO PRESENT EVIDENCE THAT THE VICTIM WAS NOT WEARING A SEATBELT AT THE TIME OF THE ACCIDENT.**

{¶19} In his sole assignment of error, Fetter argues that the trial court erred in precluding him from introducing evidence that Ford was not wearing his seat belt at the time of the accident. We disagree.

**{¶20}** Although this matter involves the admission of evidence, the purported admissibility of Ford's seat belt use is intertwined with the interpretation and application of R.C. 4513.263(F)(1). As such, this matter presents a question of law that we review de novo. *E.g.*, *Washington Cty. Home v. Ohio Dept. of Health*, 178 Ohio App.3d 78, 2008-Ohio-4342, ¶ 27 (4th Dist.) ("The interpretation of a statute involves a purely legal question. Thus, we conduct a de novo review of a trial court's judgment interpreting a statute * * *."). When employing a de novo standard of review, we conduct an independent review of the record and grant no deference to the trial court's determination. *Twigg v. Trapp*, 3d Dist. Seneca No. 13-05-44, 2006-Ohio-3236, ¶ 5.

**{¶21}** We have previously noted that the General Assembly "has created standards for the admissibility of evidence in many instances." *State v. Phipps*, 3d Dist. Auglaize No. 2-03-39, 2004-Ohio-4400, ¶ 12. One such instance of a statutorily-created evidentiary rule is found in R.C. 4513.263(F)(1). *See State v. Lucarelli*, 11th Dist. Portage No. 2012-P-0065, 2013-Ohio-1606, ¶ 34, fn. 2 (identifying R.C. 4513.263(F) as an example of a legislatively-defined evidentiary rule); *Phipps* at ¶ 12, fn. 4 (identifying R.C. 4513.263(F)'s prior version as an example of a legislatively-defined evidentiary rule); *Crum v. Walters*, 10th Dist. Franklin No. 02AP-818, 2003-Ohio-1789, ¶ 15 ("The admissibility of evidence regarding the use of a seat belt is governed by R.C. 4513.263(F)."). The statute

provides, in pertinent part, that evidence of an individual's failure to wear a seat belt "shall not be admissible as evidence in a criminal action involving the person other than a prosecution for a violation of this section." R.C. 4513.263(F)(1).

**{¶22}** It is well-established that when the language of a statute is unambiguous, we need not resort to additional rules of statutory interpretation, *State v. Siferd*, 151 Ohio App.3d 103, 2002-Ohio-6801, ¶ 33 (3d Dist.), including the rule of lenity, *State v. Banks*, 10th Dist. Franklin No. 11AP-69, 2011-Ohio-4252, ¶ 15. Rather, when faced with a statute that is plain on its face, we must merely read the words and phrases in context and give them their usual, normal, and customary meanings. R.C. 1.42; *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, ¶ 12.

**{¶23}** R.C. 4513.263(F)(1) is plain on its face and it "bars evidence of the failure to [wear a seatbelt], except for the limited purpose of obtaining a conviction for [failure to wear a seatbelt]." *Phipps* at ¶ 12, fn. 4. This matter involved Fetter's prosecution for aggravated vehicular homicide and OVI, not Ford's prosecution for failure to wear a seatbelt. As a result, R.C. 4513.263(F)(1) explicitly and unambiguously precludes Fetter from offering evidence that Ford was not wearing his seatbelt before the crash.

**{¶24}** Accordingly, we overrule Fetter's sole assignment of error.

{¶25} Having found no error prejudicial to Fetter in the particulars assigned and argued, we affirm the trial court's judgment.

*Judgment Affirmed*

**WILLAMOWSKI and SHAW, J.J., concur.**

**/jlr**