[Cite as *State v. Lightner*, 2010-Ohio-483.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
HARDIN COUNTY

STATE OF OHIO,

 PLAINTIFF-APPELLEE,     CASE NO. 6-09-03

 v.

STEVEN LIGHTNER, JR.,     O P I N I O N

 DEFENDANT-APPELLANT.

Appeal from Hardin County Common Pleas Court
Trial Court No. 20082125 CRI

Judgment Affirmed

Date of Decision: February 16, 2010

APPEARANCES:

 *Scott B. Johnson* for Appellant

 *Bradford W. Bailey* for Appellee

**SHAW, J.**

{¶1} Defendant-Appellant Steven Lightner, Jr. ("Lightner") appeals from the February 9, 2009 Judgment Entry of the Court of Common Pleas of Hardin County, Ohio sentencing him to seven years and ten months in prison for one count of Burglary, in violation of R.C. 2911.12(A)(2), a felony of the second degree, three counts of Grand Theft of Checks, in violation of R.C. 2913.02(A)(1), felonies of the fifth degree, three counts of Receiving Stolen Property, in violation of R.C. 2913.51(A)(C), felonies of the fifth degree, and one count of Engaging in a Pattern of Corrupt Activity, in violation of R.C. 2923.32(A)(1), (B)(1), a felony of the first degree.

{¶2} This matter stems from criminal conduct occurring on or about January 23, 2008, at the residence of Steven and Deb Sons, located at 613 East Pattison Street, Kenton, Ohio. The Sons were on vacation from the 16th or 17th of January until January 26, 2008. Upon returning home from vacation, the Sons discovered items missing from their home.

{¶3} The thefts were reported when Patrolman Robert Vogel was called to the residence at 613 East Pattison on January 26, 2008. When Patrolman Vogel arrived at 613 East Pattison, the Sons reported that multiple items had been stolen from the home. The Sons reported that quite a few power tools were missing, valued at over one thousand dollars, at least four checks, and a television were

missing. The stolen checks belonged to two different accounts. Two checks were from a Liberty Bank account and two checks were from a Home Savings and Loan account.

{¶4} On January 27, 2008, the Sons filed a supplemental report with the police when they found some jewelry to also be missing, including diamond earrings. In total, over fifty-two hundred dollars worth of property was found missing. The Sons also found that damage had been done to their vehicles. A 2006 Harley Davidson had been wrecked with damage totaling $3,628. Steven Sons testified that no one ever had permission to drive the motorcycle.

{¶5} While the Sons were on vacation, Sadie Zachariah ("Zachariah") and the Sons' adult children were supposed to be watching the residence at 613 East Pattison. Steve Sons specifically testified at trial that no one else had permission to be in the home while they were gone. Zachariah testified that while she was watching the house, she had let some other people into the home. In fact, Zachariah testified that not only did she have people over while she was watching the house, but that they were there without her permission on at least one occasion. One of the people Zachariah invited to her home was John Byers ("Byers"). Byers testified that when he was in the Sons' home, visiting Zachariah, Lightner, Jesse Lightner, Josh Keim, and others were also present in the home. Byers also

testified that he was at the Sons' residence on both January 23 and January 24, 2008.

**{¶6}** Byers testified that Sadie was having a party at the house, with people playing cards, using the Sons' computer, and just hanging around. Zachariah testified that she did not see anyone steal any property while she was at the home, but that she was not always watching her guests. Additionally, at the time she was house-sitting, Zachariah was still in high school. One day she came back to the house and could tell that someone had been in the home because food was out and things appeared to be missing. Zachariah testified that she could not remember if she had locked the garage door on that day.

**{¶7}** Byers testified that Lightner also asked him if he knew anyone who wanted to purchase a television, apparently referring to the Sons' television. According to Byers, he and Josh Keim got into an argument with Steve Lightner concerning whether to "rob" the Sons' home. Byers and Keim left after that discussion because they did not want to "rob" the home and Lightner was aggravated because they did not want to help Lightner move the items he wanted to steal.

**{¶8}** On January 23, 2008, Lightner and Byers used checks stolen from the Sons at the Shell gas station in Kenton, Ohio. The checks were identified as belonging to the Sons based on the information on the check as well as the check

number. One check was filled out and used by Lightner to purchase gas and cigarettes. Byers used the second check, also to purchase gasoline and cigarettes.

{¶9} When questioned at trial, Byers testified that he got the check from Lightner who said that he got them from Zachariah. Byers further testified that Zachariah had told them that they could use the Sons' vehicle to take Lightner to court in Findlay, Ohio, which explains the fact that Byers, Lightner, and Lightner's brother, Jesse Lightner, put gas in one of their cars and an SUV belonging to the Sons with the stolen checks. Zachariah testified that she did not give Lightner the checks, and that he took the checks on his own. She also testified that she did not give them permission to drive the vehicle.

{¶10} Derek Lowe, a clerk at the Shell gas station, testified that on February 7th or 8th of 2008, Lightner came into the gas station with a friend, Josh Morrisey, and attempted to purchase gas and cigarettes with a check. Lowe testified that he could not take the check because Lightner did not have identification that matched the information on the check. Although Lowe did not remember the name on the check, he remembered that it was a woman's name on the check. Lowe also testified that Byers was not with Lightner on this occasion.

{¶11} Jesse Lightner also found the keys to Steven Sons' motorcycle, took it out for a drive, and subsequently wrecked it.

{¶12} On July 8, 2008 Lightner was indicted on one count of Burglary, in violation of R.C. 2911.12(A)(2), a felony of the second degree; two counts of Grand Theft of a Motor Vehicle, in violation of R.C. 2913.02(A)(3),(B)(5), felonies of the fourth degree; one count of Theft, in violation of R.C. 2913.02(A)(1),(B)(5), a felony of the fourth degree; eleven counts of Receiving Stolen Property, in violation of R.C. 2913.51(A),(C), felonies of the fifth degree; one count of Receiving Stolen Property a Motor Vehicle, in violation of R.C.2913.51(A),(C), a felony of the fourth degree; ten counts of Grand Theft of Checks, in violation of 2913.02(A)(1), felonies of the fifth degree; and one count of Engaging in a Pattern of Corrupt Activity, in violation of R.C. 2923.32(A)(1),(B)(1), a felony of the first degree.

{¶13} Lightner was arraigned on July 17, 2008, and pled not guilty to all of the charges contained in the indictment. On October 3, 2008, the State issued a bill of particulars. On January 16, 2009, the State moved to dismiss seven counts of Grand Theft of Checks and seven counts of Receiving Stolen Property. The trial court dismissed those counts on January 21, 2009.

{¶14} A jury trial was held on February 3, 2009. The jury convicted Lightner of one count of Burglary, in violation of R.C. 2911.12(A)(2), a felony of the second degree, three counts of Grand Theft of Checks, in violation of R.C. 2913.02(A)(1), felonies of the fifth degree, three counts of Receiving Stolen

Property, in violation of R.C. 2913.51(A),(C), felonies of the fifth degree, and one count of Engaging in a Pattern of Corrupt Activity, in violation of R.C. 2923.32(A)(1), (B)(1), a felony of the first degree.

{¶15} Lightner was sentenced on February 9, 2009. At sentencing, the trial court determined that the counts of Grand Theft of Checks and Receiving Stolen Property were allied offenses. The State elected to proceed to sentencing on the counts of Grand Theft of Checks. The trial court sentenced Lightner to two years in prison for one count of Burglary, ten months in prison for each count of Grand Theft of Checks, and five years in prison for one count of Engaging in a Pattern of Corrupt Activity. The trial court ordered the ten month sentences for Grand Theft of Checks served concurrently to each other, but consecutive to the sentences for Burglary and Engaging in a Pattern of Corrupt Activity for a total prison sentence of seven years and ten months.

{¶16} Lightner now appeals, asserting four assignments of error.

**ASSIGNMENT OF ERROR I**
**THE EVIDENCE ADDUCED AT THE TRIAL WAS INSUFFICIENT TO SUPPORT A CONVICTION FOR ENGAGING IN A PATTERN OF CORRUPT ACTIVITY, BURGLARY, GRAND THEFT OF CHECKS(S), OR THE ALLIED OFFENCES [SIC] OF RECEIVING STOLEN PROPERTY.**

**ASSIGNMENT OF ERROR II**
**THE CONVICTION ON THE RICO CHARGE WAS ERROREOUS [SIC] IN THAT IT VIOLATED THE**

**APPELLANT'S CONSTITUTIONAL RIGHT AGAINST DOUBLE JEOPARDY.**

## ASSIGNMENT OF ERROR III

**THE TRIAL JUDGED [SIC] IN SENTENCING THE DEFENDANT ON THE RICO COUNT TO A PRISON TERM CONSECUTIVE TO A PRISON TERM IMPOSED FOR A PREVIOUS RICO CONVICTION WHICH WAS BASED ON THE SAME FACTS AND CIRCUMSTANCES AND SHOULD HAVE BEEN DEEMED AN ALLIED OFFENSE TO THE PRESENT CHARGE.**

## ASSIGNMENT OF ERROR IV

**THE DEFENDANT WAS NOT AFFORDED COMPETENT COUNSEL IN THAT THE COURT-APPOINTED COUNSEL FAILED TO PROTECT THE DEFENDANT'S CONSTITUTIONAL RIGHTS AGAINST DOUBLE JEOPARDY.**

*First Assignment of Error*

{¶17} In his first assignment of error, Lightner argues that the evidence introduced at trial was insufficient to support his convictions. Reviewing a challenge to the sufficiency of the evidence, requires this Court to examine the evidence in the light most favorable to the prosecution. In *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the sufficiency of the evidence test as follows:

> **[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the**

**essential elements of the crime proven beyond a reasonable doubt.**

*Jenks*, 61 Ohio St.3d at 273.

{¶18} Lightner was convicted of Burglary, Grand Theft of Checks, Receiving Stolen Property, and Engaging in a Pattern of Corrupt Activity. Burglary is defined by R.C. 2911.12(A)(2), in pertinent part, as follows:

**(A)  No person, by force, stealth, or deception, shall do any of the following:**

**(2)  Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense;**

{¶19} Although Lightner does not appear to contest the Burglary conviction, we choose to address it nevertheless.  Zachariah testified that Lightner and his friends were in the house on approximately three separate occasions, and while they may have had permission to be in the house on at least one occasion, they never had permission to take anything from the house.  Moreover, although Zachariah did not see anyone remove any property from the home, she testified that she was not always watching her guests and that on at least one occasion, they came over uninvited.

{¶20} Zachariah testified that she returned from attending school one day and noticed that someone had been in the home.  She noticed that food and

beverage containers were present that were not there when she left for school that day. Furthermore, Zachariah then noticed that the Sons' SUV had been taken out and now had a full gas tank.

**{¶21}** Steve Sons testified as to what property was missing from the home, and Byers testified that Lightner had taken checks from the Sons. Therefore, we find that there was sufficient evidence to convince the jury that on at least one occasion Lightner trespassed, uninvited in the house with the purpose of committing a theft offense therein, and therefore committed Burglary.

**{¶22}** Turning next to Lightner's convictions for Grand Theft of Checks and Receiving Stolen property, found to be allied offenses by the trial court. Grand Theft of Checks is defined by R.C. 2913.02(A)(1), in pertinent part, as follows:

> **(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:**
>
> **(1) Without the consent of the owner or person authorized to give consent**

**{¶23}** Receiving Stolen Property is defined by R.C. 2913.51(A),(C), in pertinent part, as follows:

> **No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.**

**{¶24}** Byers testified that on two instances he and Lightner took checks from the Sons to a gas station and purchased gas and cigarettes. Moreover, Byers was able to identify the exact checks used, which matched the checks missing from the Sons' residence. Moreover, Detective Vogel testified that two other checks were missing, and Lowe testified that Lightner attempted to use another check that did not belong to him.

**{¶25}** It is settled law in Ohio that "circumstantial and direct evidence inherently possess the same probative value." *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492. Therefore, there was sufficient circumstantial evidence to believe that Lightner took a third check from the Sons' residence.

**{¶26}** Finally, Lightner argues that there was insufficient evidence introduced at trial to prove his conviction for Engaging in a Pattern of Corrupt Activity. Engaging in a Pattern of Corrupt Activity is defined by R.C. 2923.32(A)(1), as follows:

> **(A)(1) No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt.**

R.C. 2923.31(C) defines "enterprise" as the following:

> **\* \* \* any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. 'Enterprise' includes illicit as well as licit enterprises.**

Finally, R.C. 2923.31(E) defines "pattern of corrupt activity" to mean:

> **two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.**

{¶27} R.C. 2923.32 defines "corrupt activity" as "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in * * * conduct constituting" one of the predicate offenses listed in R.C. 2923.31(I)(2).  See, *State v. Adkins*, 136 Ohio App.3d 765, 737 N.E.2d 1021, 2000-Ohio-1656; *State v. Schlosser* (1997), 79 Ohio St.3d 329, 335, 681 N.E.2d 911, 915-916.

{¶28} Although the predicate acts in R.C. 2923.31 need not be supported by convictions, their occurrence must at least be proven beyond a reasonable doubt. See *State v. Lightner*, 3rd Dist. No. 6-08-11, 2009-Ohio-544; *State v. Burkitt* (1993), 89 Ohio App.3d 214, 222-23, 624 N.E.2d 210.  In addition, the State must set forth the requisite predicate acts in the indictment that it intends on using as the foundation for a R.C. 2923.32 offense. *State v. Warden,* 6th Dist. No. WD-03-065, 2004-Ohio-6306, ¶ 48. This Court has previously stated that "where a defendant is required to defend himself against additional unindicted predicate offenses, he should be notified of such by identification of those charges within the indictment." *State v. Roberson,* 3rd Dist. No. 5-02-45, 2003-Ohio-4627, ¶ 13,

quoting *State v. Siferd,* 151 Ohio App.3d 103, 2002-Ohio-6801, 783 N.E.2d 591, ¶ 23.

{¶29} Lightner contends that the State failed to establish two instances of corrupt activity sufficient to support his conviction for Engaging in a Pattern of Corrupt Activity. In the indictment, the State offered the following to establish the pattern of corrupt activity:

> **STEVEN LIGHTNER JR., from on or about May 4, 2003 through on or about March 31, 2008, in Hardin County, Ohio, while employed by or associated with an enterprise did conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity to-wit: §2911.12(A)(2) Burglary [F2]; §2913.02(A)(1),(B)(5), Grand Theft of a Motor Vehicle [F4]; §2913.02(A)(3),(B)(5), Grand Theft of a Motor Vehicle[F4]; §2913.02(A)(1),(B)(5), Theft[F4]; §2913.51(A),(C), Receiving Stolen Property[F5]; §2913.51(A),(C), Receiving Stolen Property[F5]; §2913.02(A)(1) Grand Theft of Check(s) [F5]; §2913.02(A)(1) Grand Theft of Check(s) [F5]; §2913.02(A)(1) Grand Theft of Check(s) [F5]; §2913.02(A)(1) Grand Theft of Check(s) [F5]; §2913.02(A)(1) Grand Theft of Check(s) [F5]; §2913.02(A)(1) Grand Theft of Check(s) [F5]; §2913.02(A)(1) Grand Theft of Check(s) [F5]; §2913.02(A)(1) Grand Theft of Check(s) [F5]; §2913.02(A)(1) Grand Theft of Check(s) [F5]; §2913.02(A)(1) Grand Theft of Check(s) [F5]; §2913.51(A),(C), Receiving Stolen Property[F5]; §2913.51(A),(C), Receiving Stolen Property[F5]; §2913.51(A),(C), Receiving Stolen Property[F5]; §2913.51(A),(C), Receiving Stolen Property[F5]; §2913.51(A),(C), Receiving Stolen Property[F5]; §2913.51(A),(C), Receiving Stolen Property[F5]; §2913.51(A),(C), Receiving Stolen Property[F5]; §2913.51(A),(C), Receiving Stolen Property[F5]; §2913.51(A),(C), Receiving Stolen Property[F5]; §2913.51(A),(C), Receiving Stolen Property[F5], and Receiving Stolen Property. Theft offenses in municipal courts of Ohio; thefts of Motor Scooter on or about May 4, 2003 and Receiving Stolen Property namely, ATV's on or about March 2, 2007 through and including**

**March 31, 2007; when the total value of the thefts, property, contraband, etc. exceeds five hundred dollars ($500.00); in violation of Ohio Revised Code §2923.32(A)(1),(B)(1), Engaging in a Pattern of Corrupt Activity[F1], a felony of the first degree.**

{¶30} Therefore, the following acts could have been used to prove the existence of two predicate acts of corrupt activity: Burglary, two instances of Grant Theft of a Motor Vehicle, one instance of Theft, one instance of Receiving Stolen Property; one instance of Receiving Stolen Property – a motor vehicle, ten instances of Grand Theft of Checks, ten instances of Receiving Stolen Property – checks, municipal court theft offenses, thefts of motor scooters in 2003, and thefts of ATV's in 2007.

{¶31} Prior to trial, the State dismissed seven of the counts of Receiving Stolen Property – checks and Grand Theft of Checks. Additionally, at trial, the State conceded that it had not proven the charges of Grand Theft of a Motor Vehicle and Receiving Stolen Property – a motor vehicle. Moreover, the jury found Lightner not guilty of the charges of Theft and Receiving Stolen Property that did not concern the checks.

{¶32} However, viewing the evidence presented at trial, we find that the State successfully proved multiple predicate offenses. As previously discussed, sufficient evidence was introduced to prove the convictions for Burglary, Grand Theft of Checks, and the Receiving Stolen Property charges. Additionally, we are mindful that a single defendant need not commit the predicate offenses. Instead

-14-

the State must prove that the enterprise engaged in corrupt activity, but it was not required that the State prove Lightner directed, controlled, or directly participated in the activity. The State need only prove that Lightner assisted the enterprise. See *State v. Siferd*, 151 Ohio App.3d 103, 783 N.E.2d 591, 2002-Ohio-6801.

{¶33} Although the State conceded that Lightner had not committed the Grand Theft of Motor Vehicles, Byers testified that Jesse Lightner drove and wrecked Steve Sons' motorcycle during the course of their visit in the home. Byers also testified that Lightner used the Sons' SUV without their permission.

{¶34} Testimony was given by Steve Sons as to the extent of belongings stolen from their home while the Sons were on vacation. The theft extended beyond the checks at issue in the present case. Jewelry, power tools, and a television were also taken from the home, and Byers testified that Lightner expressed interest in stealing the Sons' television. Although the State was unable to prove that Lightner himself took those items, this Court notes that evidence was introduced at trial that would indicate those items were taken by Lightner, his brother Jesse, or their associates.

{¶35} Therefore, the jury was free to consider the Burglary, the charges of Grand Theft of Checks, the Receiving Stolen Property charges, the unlawful use and damage to the motor vehicles, and the theft of the other items in the Sons' home. Moreover, this Court is not convinced by Lightner's argument that all of

those occurrences were so closely related in time as to constitute a single incident. Testimony indicates that the conduct at issue in the present case occurred over the course of the Son's vacation, lasting approximately a week. Reasonable minds could conclude that these events were not so closely related that they constituted a single incident, but instead were repeated incidents so related that they constituted a pattern of corrupt activity. See *State v. Gasser* (1993), 89 Ohio App.3d 544, 626 N.E.2d 127.

{¶36} Accordingly, we find that there was sufficient evidence to prove Lightner's conviction for Engaging in a Pattern of Corrupt Activity based on the acts occurring during the Sons' vacation alone. Accordingly, Lightner's first assignment of error is overruled.

*Second and Third Assignments of Error*

{¶37} Lightner elected to brief his second and third assignments of error together. Accordingly, we elect to treat them as a single assignment of error. In his second and third assignments of error, Lightner argues that his conviction for Engaging in a Pattern of Corrupt Activity was barred by double jeopardy. In espousing this argument, Lightner assumes that the 2003 or 2007 incidents of theft of motor scooters or ATVs, which were used as predicate offenses for a previous conviction of Engaging in a Pattern of Corrupt Activity, were necessary predicate offenses for the Engaging in a Pattern of Corrupt Activity conviction in the present

case. However, based on our disposition of Lightner's previous assignment of error, finding that the Engaging in a Pattern of Corrupt Activity charge could be proven with predicate offenses based on conduct from only the January 2008 incident involving the Sons' home, we find it unnecessary to address the double jeopardy argument premised upon the predicate offenses from the prior conviction of Engaging in a Pattern of Corrupt Activity. Accordingly, these two assignments of error are overruled as moot.

*Fourth Assignment of Error*

{¶38} In his fourth assignment of error, Lightner argues that he received ineffective assistance of counsel at trial. An ineffective assistance of counsel claim requires proof that trial counsel's performance fell below objective standards of reasonable representation and that the defendant was prejudiced as a result. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus. To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, but for counsel's errors, the outcome at trial would have been different. *State v. Bradley*, 42 Ohio St.3d 136, at paragraph three of the syllabus. "Reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. *State v. Waddy* (1992), 63 Ohio St.3d 424, 433, 588 N.E.2d

819 (superseded by constitutional amendment on other grounds as recognized by *State v. Smith*, 80 Ohio St.3d 89, 103, 684 N.E.2d 668, 1997-Ohio-355).

**{¶39}** Furthermore, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. See also, *State v. Richardson*, 3rd Dist. No. 13-06-21, 2007-Ohio-115, citing *State v. Hoffman* (1998), 129 Ohio App.3d 403, 407, 717 N.E.2d 1149. Tactical or strategic decisions, even if unsuccessful, generally do not constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965, 1995-Ohio-104. Additionally, the court must look to the totality of the circumstances and not isolated instances of an allegedly deficient performance. *State v. Fritz*, 3rd Dist. No. 13-06-39, 2007-Ohio-3138, ¶35, citing *State v. Malone* (Dec. 13, 1989), 2nd Dist. No. 10564, 1989 WL 150798.

**{¶40}** Given this Court's findings in Lightner's first, second, and third assignments of error, we cannot find that counsel's performance fell below an objective standards of reasonable representation. For example, even if we could assume that some double jeopardy bar existed and counsel had failed to object, our finding that Lightner's conviction for Engaging in a Pattern of Corrupt activity was sustained by sufficient evidence from the facts of the present case, precludes a

finding of ineffective assistance of counsel based on a failure to object. Accordingly, Lightner's fourth assignment of error is overruled.

{¶41} Based on the foregoing, the February 9, 2009 Judgment Entry of the Court of Common Pleas of Hardin County, Ohio is affirmed.

*Judgment Affirmed*

**PRESTON, J., concurs.**

**/jlr**

**ROGERS, J., Concurring in Part and Dissenting in Part.**

{¶42} I concur with the majority's analysis and disposition of Lightner's fourth assignment of error; however, I respectfully dissent from the majority's analysis and disposition of Lightner's first assignment of error pertaining to his conviction for engaging in a pattern of corrupt activity and one of his convictions for grand theft of a check. Additionally, as I would sustain Lightner's first assignment of error, I would find his second and third assignments of error to be moot and would not address them.

{¶43} In his first assignment of error, Lightner argues, in part, that there was insufficient evidence to support his conviction for engaging in a pattern of corrupt activity. I agree that all of the offenses committed were so closely related in time as to constitute a single incident. The testimony at trial was unclear as to when the various offenses occurred over the course of the victims' approximate

one-week vacation, and the evidence does not preclude the possibility that all of the offenses took place in one day. In fact, other than his conviction for engaging in a pattern of corrupt activity, Lightner was only convicted of burglary and theft of checks[1], and the thefts apparently occurred during the burglary.

{¶44} Additionally, I would find that the majority impermissibly stacked inference upon inference in finding sufficient evidence existed to convict Lightner for theft of the third check. Here, evidence was heard that the Sons reported that four checks were missing from their residence; that Lightner used one check stolen from the Sons to purchase gasoline and cigarettes; that Lightner's friend, Byers, used a second check stolen from the Sons to purchase gasoline and cigarettes; and, that Lightner attempted to use a third check several weeks later to purchase gasoline and cigarettes, but that the clerk would not let him use the check because, although he could not remember the name on the check, it was a woman's name and Lightner did not have identification that matched the information on the check. As this Court recently stated, "a trier of fact is allowed to make reasonable inference based on the evidence presented before him, [however] '[a] trier of fact may not rely on an inference based entirely upon another inference, unsupported by any additional fact or another inference from other facts.'" *State v. Fields*, 3d

---

[1] We note that Lightner was also found guilty of three counts of receiving stolen property; however, the trial court found those to be allied offenses with the three counts of theft of checks and the State elected to proceed to sentencing on the theft of checks convictions.

Case No. 6-09-03

Dist. No. 16-09-05, 2009-Ohio-5909, ¶23, quoting *State v. Taylor*, 7th Dist. No. 98 JE 31, 2001-Ohio-3162.   See, also, *Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 329, 331-335.   Here, I believe that the conclusion that Lightner stole a third check is an impermissible inference upon an inference when based solely upon evidence that four checks were missing from the Sons, that Lightner and his friend used two of the Sons' checks, and that Lightner attempted to use another check several weeks later that was not identified as belonging to the Sons.

/jlr