[Cite as *State v. Benitez*, 2013-Ohio-2334.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98930**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JOSE BENITEZ

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-560019

**BEFORE:** McCormack, J., Keough, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 6, 2013

**ATTORNEY FOR APPELLANT**

Richard Agopian
The Hilliard Building
1415 West 9th St., 2nd Floor
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Marcus A. Henry
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH 44113

TIM McCORMACK, J.:

**{¶1}** Defendant-appellant, Jose Benitez ("Benitez"), appeals his conviction for three counts of violating a protective order and two counts of menacing by stalking. Finding no merit to the appeal, we affirm.

## Procedural History

**{¶2}** On March 2, 2012, the Cuyahoga County grand jury indicted Benitez on three counts of violating a protection order ("VPO") in violation of R.C. 2919.27(A)(2) and six counts of menacing by stalking in violation of R.C. 2903.211(A)(1), in common pleas court, Case No. CR-560019. Benitez was also indicted on three different cases as follows: (1) in Cuyahoga C.P. No. CR-557653, Benitez was indicted on one count of menacing by stalking; (2) in Cuyahoga C.P. No. CR-557652, Benitez was indicted on another count of menacing by stalking; and (3) in Cuyahoga C.P. No. CR-556837, Benitez was indicted on one count of rape in violation of R.C. 2907.02 and one count of kidnapping in violation of R.C. 2905.01. Pursuant to the state's motion to consolidate, filed on May 17, 2012, the above cases were joined for trial purposes.

**{¶3}** Following a jury trial, which commenced on July 16, 2012, and concluded on July 18, 2012, the state dismissed Counts 2 and 8 in CR-560019, which alleged menacing by stalking. Thereafter, a jury returned the following verdict: not guilty of one count of rape and one count of kidnapping (CR-556837) and not guilty of two counts of menacing by stalking (CR-557653 and CR-557652). In CR-560019, the jury found

Benitez not guilty of Counts 5 and 6 of menacing by stalking. The jury found Benitez guilty as follows: on Counts 1, 4, and 7, of violating a protection order, and on Counts 3 and 9, of menacing by stalking. With respect to Count 4, violating a protection order, the jury found that Benitez did not commit a felony in the course of violating the protection order; therefore, Count 4 was reduced from a felony of the third degree to a misdemeanor of the first degree.

{¶4} On August 13, 2012, the trial court sentenced Benitez to 12 months in prison and 180 days to run concurrently. The court further sentenced Benitez to five years community control.

## Substantive Facts

{¶5} On November 23, 2011, Marlena Ramos obtained a temporary protection order against Benitez, her estranged husband, based upon her allegation of rape that allegedly occurred on November 16, 2011. Thereafter, the grand jury indicted Benitez on two separate counts of menacing by stalking. Benitez was later acquitted of these charges.

{¶6} Three separate incidents form the basis of the remaining allegations (contained in CR-560019) and are the subject of this appeal. At all times relevant to the alleged events, the temporary protection order remained in place.

{¶7} Ms. Ramos testified that, on January 8, 2012, she was walking to a laundromat with her children and received a call from Benitez. In the call, Benitez allegedly asked Ms. Ramos whether her brother was taking her to the laundromat and

where she was taking the children. Ms. Ramos testified that she felt "[i]nsecure" because she felt that someone was following her. She later filed a police report.

{¶8} On February 14, 2012, Ms. Ramos received a present from Benitez. She testified that one of her children went downstairs to retrieve what she thought were presents for her children from Benitez's brother. Rather, it was a gift of perfume, flowers, and chocolate from Benitez to Ms. Ramos. Ms. Ramos testified that after receiving the gift, she saw Benitez's car outside.

{¶9} Finally, Ms. Ramos testified that she saw Benitez drive around her residence around midnight on February 22, 2012, "about three times." She also testified that she received a text message from Benitez around that same time, stating, "I hope you do not leave the children alone because I found out that that mother f * * * er arrived from Puerto Rico." Ms. Ramos said that these events made her afraid and angry. She called 911 at that time and then again the next day when she saw Benitez driving around again. She filed another police report, and she was informed later that evening that Benitez had been arrested.

### Assignments of Error

I. Appellant's conviction on counts one, three, and nine was in error since the indictment failed to provide him with notice as guaranteed by Amendment VI of the United States Constitution and Section 10 of Article I of the Ohio Constitution.

II. The Appellant was denied due process of law when his incarceration during trial was brought to the attention of the jury.

III. The Appellant was denied the effective assistance of counsel and was not afforded his constitutional right to counsel pursuant to the Sixth

Amendment and due process and a fair trial pursuant to the Fifth and Fourteenth Amendments of the United States Constitution.

IV. The Appellant's convictions are against the weight of the evidence.

V. The evidence was insufficient to convict the defendant.

## The Indictment

{¶10} In his first assignment of error, Benitez claims that his convictions for Counts 1, 3, and 9 were in error because he did not receive sufficient notice of the crimes against him. We disagree.

{¶11} "The purpose of an indictment is to inform the accused of the crime with which he is charged. The indictment, therefore, provides notice to the defendant of the charges against him so that he may prepare a defense." (Citations omitted.) *State v. Davis*, 8th Dist. No. 61076, 1992 Ohio App. LEXIS 4754, *2 (Sept. 17, 1992).

{¶12} Benitez claims that the indictment was defective in that Counts 3 and 9 failed to identify the victim and the history of violence. He further claims that the indictment in Count 1 failed to name the felony offense. In support of his position, Benitez relies on *State v. Muniz*, 8th Dist. No. 93528, 2010-Ohio-3720.

{¶13} In *Muniz*, the appellant was charged with intimidation of a crime victim and disseminating matter harmful to juveniles. The jury found Muniz guilty of intimidation and not guilty of disseminating harmful matter. Muniz argued that the indictment did not provide notice of the charges against her in that it did not list the elements of the predicate offense or the date and location of the alleged crime constituting the predicate offense.

**{¶14}** In finding the indictment defective, this court analogized the *Muniz* case to cases in which a defendant is charged with a crime that has its foundation on unindicted predicate acts, stating that "'[w]here a defendant is required to defend himself against additional unindicted predicate offenses, he should be notified of such identification of those charges within the indictment.'" (Citations omitted.) *Id.* at ¶ 19, quoting *State v. Lightner*, 3d Dist. No. 6-08-15, 2009-Ohio-2307, ¶ 16. Moreover, where such unindicted offenses are used, "'the identification of the predicate acts in the indictment provides some assurance that the defendant was indicted on the same essential facts on which he was tried and convicted.'" *Id.*, quoting *State v. Siferd*, 151 Ohio App.3d 103, 2002-Ohio-6801, 783 N.E.2d 591, ¶ 20 (3d Dist.). This court, therefore, held that where a defendant is charged with intimidation of a "victim of crime," an essential element of the charge is that the underlying crime did, in fact, occur, and it created a victim.

> The charge of intimidation of a crime victim presupposes an earlier crime has been committed. The state has the burden of proof on all essential elements of the crime as charged; therefore, it must prove the underlying acts occurred for there to be a crime victim, regardless of whether a complaint has been filed or a charge brought for that underlying crime.

*Muniz* at ¶ 20.

**{¶15}** In this case, Benitez was not charged with a crime based upon unindicted predicate acts. Rather, unlike the appellant in *Muniz*, Benitez was charged in four separate indictments. Each indictment listed Ms. Ramos as the alleged victim and Benitez as the alleged perpetrator. Each indictment alleged a felony offense. Counts 3 and 9 of this indictment alleged that Benitez, "by engaging in a pattern of conduct, did

knowingly cause Marlena Ramos to believe that Jose Benitez will cause physical harm to Marlene Ramos or cause mental distress to Marlena Ramos."

{¶16} Moreover, unlike in *Muniz*, Benitez had notice of his "history of violence" toward Ms. Ramos, as the three previous indictments issued alleged four felony offenses: rape, kidnapping, and two separate counts of menacing by stalking. Additionally, Counts 3 and 9 of the present indictment specifically allege that "the offender has a history of violence toward the victim * * * or a history of other violent acts toward the victim * * * ."

{¶17} Benitez's claim that he did not receive sufficient notice of the crime with which he was charged, or the identity of his victim, is not well taken. The crime of which Ms. Ramos is the victim is identified in the present indictment as well as the three other indictments issued. Furthermore, Benitez is the alleged perpetrator, and Ms. Ramos is the alleged victim, in all of the charges. He cannot, therefore, claim he had no notice of the charges against him.

{¶18} Benitez's first assignment of error is overruled.

## Appellant's Incarceration

{¶19} In his second assignment of error, Benitez claims that he was denied due process of the law when his incarceration during trial was brought to the attention of the jury. We disagree.

**{¶20}** The record reflects that, during the trial, defense counsel elicited testimony regarding Benitez's incarceration from a witness. During cross-examination of Detective Keith Hunter by defense counsel, the following exchange occurred:

> Q: There was a TPO in effect in November, correct?
> A: November 23rd, yes.
> Q: And it stayed in effect all the way until February, correct?
> A: Correct.
> Q: Because February he was put in jail, correct?
> A: Correct.
> Q: He stayed in jail until now, correct?
> A: Correct.

**{¶21}** Under the invited error doctrine, "a party is not entitled to take advantage of an error that he himself invited or induced." *State v. Doss*, 8th Dist. No. 84433, 2005-Ohio-775, ¶ 5, quoting *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, ¶ 27; *State ex rel. V Cos. v. Marshall*, 81 Ohio St.3d 467, 471, 692 N.E.2d 198 (1998). The doctrine precludes a defendant from making "an affirmative and apparent strategic decision at trial" and then complaining on appeal that the result of that decision constitutes reversible error. *Doss* at ¶ 7, quoting *United States v. Jernigan*, 341 F.3d 1273, 1290 (11th Cir.2003). The doctrine applies when defense counsel is "actively responsible" for the trial court's error. *State v. Campbell*, 90 Ohio St.3d 320, 324, 2000-Ohio-183, 738 N.E.2d 1178.

**{¶22}** In this case, defense counsel made an apparent strategic decision at trial. His line of questioning was designed to establish the position that Ms. Ramos had wanted Benitez "out of the way for her" so that she could have a relationship with another

individual. Benitez cannot now claim that his due process rights were violated by defense counsel's elicited testimony concerning Benitez's incarceration.

{¶23} Benitez's second assignment of error is, therefore, overruled.

## Ineffective Assistance of Counsel

{¶24} In his third assignment of error, Benitez contends that he was denied effective assistance of counsel because: (1) counsel failed to object to the defective indictment; (2) counsel failed to oppose joinder of four separate cases; (3) counsel referred to Benitez's incarceration during trial; and (4) cumulative errors of counsel. For the reasons that follow, we find no merit to Benitez's claim.

{¶25} In order to establish a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) his counsel was deficient in some aspect of his representation, and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶26} The first element requires a showing that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. It necessarily requires that when a defendant complains of the ineffectiveness of counsel's assistance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-688.

{¶27} Regarding the second element, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538

N.E.2d 373 (1989), citing *Strickland* at 694. Moreover, a defendant's failure to satisfy one element of the *Strickland* test negates the court's need to consider the other. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Strickland* at 697.

{¶28} Benitez first argues that trial counsel's failure to object to the allegedly defective indictment is ineffective assistance of counsel. Having previously determined in his first assignment of error that the indictment provided Benitez with sufficient notice of the crimes with which he was charged, we necessarily find that he was not denied effective assistance of counsel for failing to object to the indictment.

{¶29} Next, Benitez contends that counsel's failure to oppose joinder of the four separate trials is ineffective assistance of counsel. He claims, specifically, that he was unduly prejudiced by the trial of four cases before one factfinder.

{¶30} Under Crim.R. 8(A), two or more offenses may be charged together if the offenses "are of the same or similar character, * * * or are based on two or more acts or transactions connected together * * * or are part of a course of criminal conduct." *State v. Woodson*, 8th Dist. No. 93476, 2010-Ohio-5230, ¶ 9, citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 94. The law, in fact, favors joining multiple offenses in a single trial if the requisites of Crim.R. 8(A) are fulfilled. *Id.* "Joinder conserves judicial and prosecutorial time, lessens the not inconsiderable expenses of multiple trials, diminishes inconvenience to witnesses, and minimizes the possibility of incongruous results in successive trials before different juries." *State v. Thomas*, 61 Ohio St.2d 223, 225, 400 N.E.2d 401 (1980). If it appears, however, that

the defendant would be prejudiced by the joinder, a trial court may grant a severance under Crim.R. 14. *Diar* at ¶ 95.

**{¶31}** In deciding a claim of ineffective assistance of counsel, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. In other words, the defendant must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Citation omitted.) *Id.* Trial strategy, including debatable trial tactics, does not constitute ineffective assistance of trial counsel. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 111. Rather, the decision to file a motion for separate trials or to proceed with the joinder of the offenses may be a matter of counsel's trial strategy. *State v. Bishop*, 8th Dist. No. 53278, 1988 Ohio App. LEXIS 246, *9 (Jan. 21, 1988).

**{¶32}** In this case, it is reasonable to presume that trial counsel's failure to oppose the state's motion for joinder was sound trial strategy. The offenses charged were of a similar character and arose out of the same incident or course of conduct: the charges against Benitez arose out of the initial rape and kidnapping allegations of November 16, 2011, and involved the same victim. Each case also required the same witnesses. Having multiple prosecutions in this case could cause "harassment, delay, trauma, and [greater] expense." *State v. Schaim*, 65 Ohio St.3d 51, 58, 600 N.E.2d 661 (1992). Moreover, by allowing the cases to be tried together, counsel benefitted from

testimony that may not have been admitted in the separate trials. Trial counsel may have reasonably believed that the jury was more likely to believe Benitez's position: that Ms. Ramos wanted Benitez out of the way in order to have a romantic relationship with Mr. Ramon, a witness in the case. Further, even if defense counsel had opposed the motion for joinder or subsequently moved for severance, the trial court would have been well within its discretion in maintaining the joinder.

{¶33} Because we find counsel's approach reasonable trial strategy, counsel's conduct in this instance did not fall below objective professional standards. Furthermore, as the jury acquitted Benitez of the felony rape, felony kidnapping, and four counts of felony menacing by stalking, we do not find that Benitez was prejudiced by the joinder.

{¶34} Benitez next claims that counsel's reference to his incarceration during trial amounts to ineffective assistance of counsel. We previously determined in this case that defense counsel made an apparent strategic decision in eliciting such testimony from Detective Hunter, and under the invited error doctrine, Benitez cannot take advantage of an error that he himself invited or induced. For this same reason, we cannot allow Benitez to claim ineffective assistance of counsel for the alleged error.

{¶35} This court has previously concluded that to allow such a claim, where counsel induced the error, would defeat the purpose of the invited error doctrine:

> "[C]onsidering an ineffective assistance of counsel claim brought about as a result of invited error would necessarily vitiate our ruling on invited error. There is no point in having a stringent invited error doctrine only to allow it to be overcome by finding counsel ineffective for having invited the error."

*State v. West*, 8th Dist. Nos. 97391 and 97900, 2013-Ohio-96, ¶ 27, quoting *Doss*, 8th Dist. No. 84433, 2005-Ohio-775, ¶ 9. Regardless, invited error involves the exercise of trial strategy, and courts have consistently held that an appellate court "will not question matters of trial strategy." *Id.* This court must presume counsel's conduct falls within the wide range of reasonable professional assistance and is the product of sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674. It is, therefore, not a denial of the effective assistance of counsel.

{¶36} Finally, Benitez contends that he was prejudiced by the cumulative effect of counsel's alleged errors. The courts recognize that a conviction will be reversed where the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial. *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus. In order to find cumulative error, we must find: (1) that multiple errors were committed at trial, and (2) there is a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors. *State v. Viceroy*, 8th Dist. No. 97031, 2012-Ohio-2494, ¶ 21, citing *State v. Clark*, 8th Dist. No. 89371, 2008-Ohio-1404, ¶ 62.

{¶37} Having found no errors with respect to Benitez's claim of ineffective assistance of counsel, the doctrine of cumulative errors is inapplicable. Further, as previously discussed, we find that Benitez has not been prejudiced by trial counsel's actions.

{¶38} Accordingly, Benitez's third assignment of error is overruled.

**Manifest Weight and Sufficiency of the Evidence**

{¶39} In his fourth and fifth assignments of error, Benitez challenges his conviction as being both against the manifest weight of the evidence and not supported by sufficient evidence. For the following reasons, we disagree.

{¶40} The test for sufficiency of the evidence requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. No. 92266, 2009-Ohio-3598, ¶ 12. When reviewing a challenge of the sufficiency of the evidence, an appellate court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The relevant inquiry is "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A sufficiency challenge involves a question of law and does not permit us to weigh the evidence. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶41} While a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Robinson*, 162 Ohio St. 486, 487, 124 N.E.2d 148 (1955). Unlike a challenge of the sufficiency of the evidence, a manifest weight challenge raises a question of fact. This challenge "questions whether the prosecution

met its burden of persuasion." *State v. Ponce*, 8th Dist. No. 91329, 2010-Ohio-1741, ¶ 17, quoting *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). The court, in reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins* at 387; *Martin* at 175.

{¶42} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the finder of fact's resolution of the conflicting testimony. *Thompkins* at 387. Therefore, the discretionary power to grant a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶43} In reviewing a manifest weight challenge, a reviewing court must be mindful that the weight to be given the evidence and the credibility of the witnesses are matters primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). A jury

is free to believe all, some, or none of the testimony of the witnesses appearing before it. *Iler v. Wright*, 8th Dist. No. 80555, 2002-Ohio-4279, ¶ 25.

**{¶44}** In this case, the jury found Benitez guilty under Counts 3 and 9 of menacing by stalking in violation of R.C. 2903.211(A)(1), along with a history of violence specification. The jury found Benitez guilty under Count 1 of violating a protection order in violation of R.C. 2919.27(A)(2), during the commission of a felony, i.e. menacing by stalking. In Count 4, the jury found Benitez guilty of violating a protection order; however, the jury found that this violation did not occur during the commission of a felony. Finally, the jury found Benitez guilty of a misdemeanor violation of a protection order in Count 7. Benitez was found not guilty of menacing by stalking under Counts 5 and 6. Benitez was also found not guilty of rape, kidnapping, and two counts of menacing by stalking in the separate indictments in CR-556837, CR-557653, and CR-557652.

**{¶45}** R.C. 2919.27(A)(2) provides that "[n]o person shall recklessly violate the terms of * * * [a] protection order issued pursuant to * * * 2903.214 of the Revised Code." Ordinarily, violating a protection order is a misdemeanor of the first degree. R.C. 2919.27(B)(2). The statute provides, however, that if the offender violates a protection order while committing a felony offense, the violation is a felony of the third degree. R.C. 2919.27(B)(4).

**{¶46}** R.C. 2903.214 allows for a protection order to protect a victim of menacing by stalking. The menacing by stalking statute provides that "[n]o person by engaging in

a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211(A)(1).

**{¶47}** By definition, a pattern of conduct is "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C. 2903.211(D)(1). The alleged incidents need not occur within any specific time frame. *Rufener v. Hutson*, 8th Dist. No. 97635, 2012-Ohio-5061, ¶ 16.

**{¶48}** Menacing by stalking is a felony of the fourth degree if any of the following applies:

> (c) In committing the offense under division (A)(1), (2), or (3) of this section, the offender trespassed on the land or premises where the victim lives, is employed, or attends school * * *
>
> * * *
>
> (e) The offender has a history of violence toward the victim or any other person or a history of other violent acts toward the victim or any other person.
>
> * * *
>
> (g) At the time of the commission of the offense, the offender was the subject of a protection order issued under * * * 2903.214 of the Revised Code * * *.

R.C. 2903.211(B)(2).

**{¶49}** In support of his sufficiency and manifest weight challenges, Benitez contends that the state failed to establish that he engaged in a "pattern of conduct"

essential to the charge of menacing by stalking. He claims that because of the multiple charges of menacing by stalking pertaining to several different days or alleged incidents, the jury was confused. He further claims that the state failed to properly establish a "history of violence" toward Marlena Ramos, the alleged victim.

{¶50} Ms. Ramos testified that on November 16, 2011, Benitez, upon entering the home to use the restroom, physically assaulted her. She testified that he held her against the wall, pinched her hand when she tried to prevent him from lifting her shirt, and scraped his fingernails down the length of her body, from her breasts to her vagina, placing his hand in her underpants. Ms. Ramos called 911 after Benitez left the house. The state presented a recording of the 911 call, as well as pictures of the scratches Ramos had on her body. On November 23, 2011, she obtained a protection order against Benitez. At all times relevant to the incidents that occurred after this date, this protection order was in place.

{¶51} Ms. Ramos also testified concerning two incidents that allegedly occurred in December 2011. During the first incident, Ms. Ramos stated that she saw Benitez at the bus stop as she awaited the bus. Both Ms. Ramos and Edwin Ramon testified that Benitez approached Mr. Ramon's car, which was near Ms. Ramos, and punched his window. Ms. Ramos testified that Benitez began to yell at her, which caused her to be nervous and scared. She then filed a police report with respect to this incident. Ms. Ramos testified that approximately one week later, Benitez again followed her as she rode

the bus. She stated that she called 911 and awaited a police car once she exited the bus. Ms. Ramos testified that she was scared during this incident.

{¶52} The evidence presented by the state with respect to the alleged rape in November is sufficient to establish that Benitez had a history of violence with Ms. Ramos. This evidence includes Ms. Ramos's own testimony as to how Benitez held her against her will, physically assaulted her, leaving scratch marks on her body and causing her to be afraid of Benitez, as well as photographs of the marks and a taped 911 call that she placed after the alleged rape, which demonstrated her fear and distress. Ms. Ramos and Mr. Ramon also testified that Benitez punched Mr. Ramon's car window when Benitez saw Ms. Ramos and Mr. Ramon. The jury, therefore, had ample evidence from which to determine that Benitez had a history of violence towards Ms. Ramos.

{¶53} The state also presented evidence concerning three other alleged incidents to establish violations of a protection order and menacing by stalking. Detective Hunter testified that the protection order was in place during each of these events, from November 23, 2011, through February 2012.

{¶54} The first incident occurred on January 8, 2012. Ms. Ramos testified that she was walking to a laundromat with her children and received a call from Benitez. She testified that Benitez asked her whether her brother was taking her to the laundromat and where she was taking the children. Ms. Ramos testified that this phone call made her feel "[i]nsecure" because "I always felt that someone was following me." She filed a police report after this phone call.

**{¶55}** Ms. Ramos then testified concerning receiving a gift from Benitez on February 14, 2012. She testified that one of her children went downstairs to retrieve what she thought were presents for her children from Benitez's brother; rather, it was a gift of perfume, flowers, and chocolate from Benitez to Ms. Ramos. Ms. Ramos testified that after receiving the gift, she saw Benitez's car outside.

**{¶56}** The final incident concerns the evening of February 22, 2012, during which Benitez contacted Ms. Ramos through text messaging. Ms. Ramos testified that she saw Benitez drive around her residence around midnight "about three times." She also testified that she received a text message from Benitez around that same time, stating, "I hope you do not leave the children alone because I found out that that mother f * * *er arrived from Puerto Rico." The state presented evidence of this text message taken from Ms. Ramos's phone, noting that it was received at 1:16 a.m. Ms. Ramos testified that seeing Benitez drive around her house and receiving the text message made her afraid and angry. She called 911 at that time. She testified that she phoned 911 the following day, when she saw Benitez driving around again. She filed another police report. She was informed on the evening of February 23 that Benitez had been arrested.

**{¶57}** The record, as outlined above, demonstrates that the state presented sufficient evidence to support the jury's determination that Benitez committed the offenses of violating a protection order and menacing by stalking. The evidence and testimony presented at trial sufficiently established each and every element of the offenses.

{¶58} The evidence demonstrates that Benitez engaged in a pattern of conduct that caused Ms. Ramos fear and distress. The incidents of the alleged rape on November 16, 2011, along with the two incidents in December that resulted in two separate charges of menacing by staking, adequately establish a pattern of conduct sufficient to establish menacing by stalking, as referenced in Count 3 of the indictment. These incidents, along with the incidents of January 8, 2012, adequately establish a pattern of conduct sufficient to support menacing by stalking referenced in Count 9.

{¶59} The evidence further establishes that Benitez violated a protection order in support of Counts 1, 4, and 7. The evidence and testimony sufficiently demonstrate that the protection order was in place from November 23, 2011, through February 2012, when Benitez was arrested, and that each offense occurred during this time period. Moreover, the evidence presented as to the incident of January 8, 2012, sufficiently established that a violation of the protection order was committed while engaging in a felony offense, thus supporting the jury's guilty verdict as to the enhancement of Count 1.

{¶60} In light of the above, we find, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. We, therefore, find sufficient evidence existed to convict Benitez on three counts of violation of a protection order and two counts of menacing by stalking, with a history of violence specification.

{¶61} Furthermore, we are unable to conclude that this is the exceptional case in which the evidence weighs heavily against Benitez's convictions and the jury lost its way.

The jury, as the trier of fact, was in the best position to weigh the credibility of the witnesses and was free to find the testimony of the state's witnesses credible. We, as a reviewing court, may not substitute our own judgment for that of the jury. We find, therefore, that Benitez's conviction is not against the manifest weight of the evidence.

{¶62} Accordingly, Benitez's fourth and fifth assignments of error are overruled.

{¶63} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
EILEEN T. GALLAGHER, J., CONCUR