[Cite as *State v. Trussell*, 2018-Ohio-1838.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105777**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# CHRISTOPHER TRUSSELL

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-601904-A

**BEFORE:** Kilbane, P.J., Celebrezze, J., and Jones, J.

**RELEASED AND JOURNALIZED:** May 10, 2018

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 670218
Northfield, Ohio 44067


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
Maxwell Martin
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1}  Defendant-appellant, Christopher Trussell ("Trussell"), appeals from his jury convictions for rape, kidnapping, and domestic violence.  For the reasons set forth below, we affirm.

{¶2}  In January 2016, Trussell was charged in an eight-count indictment arising out of allegations by his girlfriend, T.R., that Trussell kidnapped her and sexually and physically assaulted her.  The indictment charged Trussell with two counts of rape, one count of kidnapping, one count of domestic violence, two counts of endangering children, one count of disrupting public service, and one count of having weapons while under disability.  Each of the two counts of rape carried a notice of prior conviction specification, a repeat violent offender specification, as well as one- and three-year firearm specifications. The kidnapping count included the same specifications, and additionally included a sexual motivation specification.

{¶3}  In March 2017, this matter proceeded to a jury trial, at which the following evidence was adduced.

{¶4}  T.R. testified she was in an intimate relationship with Trussell in 2015.  He moved in with her and her two young sons in July 2015.  She explained that she met Trussell when she was in high school and has known him for about 20 years.

{¶5}  In December 2015, Trussell was driving T.R. home from work when the two got into an argument over T.R.'s relationship with a woman whom she calls "Niecy,"

and Niecy's son, Jay. T.R. explained she considers Niecy as a mother figure, and Jay is like a brother to her.

{¶6} T.R. testified that after she and Trussell arrived home, Trussell was "in a bad mood" and "had an attitude." He cancelled their plans to go to a Cavaliers basketball game, and they both went to bed for the night. She explained that she woke up at 3:00 a.m. and went to sleep on the couch in another room. Approximately a half hour later, Trussell also woke up, and came to find her. Trussell brought T.R. a blanket and then went outside. T.R. testified she heard him start her car up.

{¶7} Around 4 a.m., Trussell returned inside and began to complain to T.R. that her sons had not yet followed his instruction to clean up the yard. He proceeded to wake up T.R.'s ten and eleven-year-old sons and ordered them outside to clean the yard. T.R. testified her thumb was injured when Trussell threw her against a wall when she tried to prevent Trussell from lunging at her eldest son.

{¶8} While the boys were outside cleaning the yard, Jay sent T.R. a message on Facebook. Trussell noticed T.R. was using the Facebook application on her cell phone and demanded to know with whom she was messaging. Trussell accused T.R. of cheating on him with Jay, took her phone, and began to send messages to Jay.

{¶9} T.R. explained that after Trussell threw her against the wall, she told him she was ending their relationship, and she asked him to leave the home. Trussell then threatened to kill Niecy and Jay as well as any witnesses to their murders. Trussell told T.R. to get dressed so they could leave the house. He told T.R. that he wanted her to take

him to Niecy and Jay's house. T.R. refused, explaining to Trussell that she had to go to work in a few hours. T.R. testified she had tried to leave the house, but Trussell blocked the door and would not allow her to leave. Trussell destroyed her cell phone by smashing it on the floor until it fell apart.

{¶10} A few hours later, T.R. ultimately complied with Trussell's order to get dressed and leave the house with him since he claimed to have a gun in a backpack he had brought in the house from the garage. T.R. explained that Trussell allowed her to contact her employer to call off of work and also allowed her to leave her father's and older daughter's telephone numbers for her sons. Before leaving with Trussell, T.R. told her sons to go to a neighbor's house and call her father or daughter.

{¶11} Trussell forced T.R. into her car with him and again demanded to know where Niecy and Jay lived. T.R. gave him vague directions. At one point while in the car, Trussell hit T.R. in the face. T.R. tried to jump out of the moving car, but Trussell yanked her back in and threatened to shut her in the trunk. Trussell momentarily stopped the car in the parking lot of an RTA bus and train station. She attempted to get out of the car a second time, but Trussell yanked her back in. Before Trussell drove the car out of the parking lot, he forced T.R. to perform oral sex on him by yanking her by the neck, pulling her head down toward his lap. Trussell then drove home.

{¶12} When Trussell and T.R. arrived home, T.R.'s sons were no longer there. Trussell would not let T.R. leave the house and again forced her to perform oral sex on him. T.R. testified that she pleaded with Trussell "please don't make me do this, I don't

want to do this." He threatened to use the gun he claimed to have in the backpack to force T.R. to remove her clothes. Trussell proceeded to vaginally rape her. He ejaculated on her face, chest, and stomach.

{¶13} T.R. explained that she was unable to call the police because Trussell had destroyed her only phone — her cell phone — earlier that morning. Eventually, T.R.'s father arrived at the home and Trussell went outside to talk to him. After talking with T.R.'s father, Trussell left the house. T.R. showed her father her injuries and the police arrived.

{¶14} After the incident, Trussell sent T.R. a letter apologizing for what happened. He told her he loved her, but also attempted to dissuade her from testifying against him.

{¶15} The responding Cleveland police officer and the nurse who performed a rape kit on T.R. testified as to T.R.'s demeanor and injuries. A forensic DNA analyst testified to the results of the rape kit. The forensic analyst concluded to a "reasonable degree of scientific certainty" that Trussell's DNA matched the seminal fluid recovered from T.R.'s face, abdomen, and chest. T.R.'s adult daughter also testified.

{¶16} At the conclusion of the state's case, the defense made a Crim.R. 29 motion for judgment of acquittal. The trial court denied this motion and Trussell's renewed motion made after the defense rested without calling any witnesses.

{¶17} The jury found Trussell guilty of rape as charged in Count 1, kidnapping as charged in Count 3, and domestic violence as charged in Count 4. The jury found him

not guilty of the gun specifications as charged in Counts 1 and 3, and the sexual motivation specification as charged in Count 3.

{¶18} Prior to trial, Trussell elected to try Count 8 _ the having a weapon while under disability count, as well as the notice of prior conviction and repeat violent offender specifications, to the bench. After the jury announced its verdict, the trial court held a hearing and found Trussell guilty on Count 8 as well as the notice of prior conviction and repeat violent offender specifications in Counts 1 and 3. In April 2017, the trial court sentenced Trussell to ten years in prison.

{¶19} It is from this order that Trussell now appeals, raising the following three assignments of error for our review:

### Assignment of Error One

The trial court erred when it refused to dismiss a potential juror for cause.

### Assignment of Error Two

[Trussell's] convictions for rape and kidnapping were against the manifest weight of the evidence.

### Assignment of Error Three

[Trussell] was denied his right to effective assistance of counsel guaranteed by Article I, Section 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution when trial counsel failed to subpoena impeachment evidence.

### Challenge for Cause

{¶20} In the first assignment of error, Trussell argues the trial court erred in denying his request to remove a potential juror for cause. He contends that the

challenged venire member would have been an unsuitable juror given her past experience as a volunteer at a domestic violence crisis hotline. He argues this experience "would [have made] it difficult for her to hear the evidence impartially."

{¶21} It is well established that "'[a] trial court enjoys broad discretion in determining a juror's ability to be impartial.'" *State v. Collins*, 8th Dist. Cuyahoga No. 89529, 2008-Ohio-578, ¶ 36, quoting *State v. Dennis*, 79 Ohio St.3d 421, 427, 1997-Ohio-372, 683 N.E.2d 1096. A trial court is permitted to rely on a juror's testimony in determining that juror's impartiality. *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 191. A trial court's ruling on a challenge for cause will not be overturned on appeal if the record supports it. *State v. Murphy*, 91 Ohio St.3d 516, 526, 2001-Ohio-112, 747 N.E.2d 765.

{¶22} In support of his contention that the challenged venire member should have been dismissed for cause, Trussell cites to Crim.R. 24(C)(9) and (14), which state in pertinent part:

A person called as a juror may be challenged for the following causes:

* * *

(9) That the juror is possessed of a state of mind evincing enmity or bias toward the defendant or the state; but no person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion with reference to the guilt or innocence of the accused, if the court is satisfied, from the examination of the juror or from other evidence, that the juror will render an impartial verdict according to the law and the evidence submitted to the jury at the trial.

* * *

(14) That the juror is otherwise unsuitable for any other cause to serve as a juror.

\* \* \*

The validity of each challenge listed in division (B) of this rule shall be determined by the court.

{¶23} Trussell submits he was prejudiced when the trial court overruled his challenge for cause. This court has held that the possibility of prejudice to a criminal defendant by a trial court's refusal to dismiss a prospective juror for cause only arises if that ruling forces the defendant to exhaust his or her peremptory challenges.[1] *Id.*, citing *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, _ 86-87. Here, defense counsel exercised Trussell's fourth and final peremptory challenge in order to excuse the venire member after the trial court overruled his challenge for cause. *See* R.C. 2945.21(A)(1).

{¶24} The record reflects the trial court questioned the challenged venire member _ juror No. 18 _ about her ability to be fair and impartial juror in the present matter:

> THE COURT: Now, you heard all of the questions that we asked. I didn't see your hand go up, I don't know if I missed it, but do you feel that you can be a fair and impartial juror in this case?
>
> JUROR NO. 18: I would like to say yes but I do feel the need to state that in the past I worked as a volunteer answering crisis line for victims of

---

[1] We note that "[o]ur system permits two types of challenges: challenges for cause and peremptory challenges. Challenges for cause obviously have to be explained; by definition, peremptory challenges do not." *Batson v. Kentucky*, 476 U.S. 79, 127, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

domestic violence. And I know that is a factor in this case and I felt that you probably should know that.

THE COURT: Thank you. I appreciate that. Do you think that you could set aside the calls you received, the information that you received from callers calling the hot line and make a fair and impartial decision as it relates to [Trussell]?

JUROR NO. 18: I believe in the importance of having a free trial _ or a fair trial and I understand that need to presume innocence so I would do my best to do that.

{¶25} The trial court allowed the assistant county prosecutor and defense counsel to further question juror No. 18. In response to the parties' questions, juror No. 18 explained that she had volunteered at a domestic violence crisis hotline for one year about 25 years ago. She also indicated she could be fair in considering the present case. She stated her belief that she could evaluate the credibility of each witness independent of her volunteer experience.

{¶26} After careful review of the record, we find support for the trial court's determination that potential juror No. 18 could be fair and impartial in the present matter. Thus, the trial court did not abuse its discretion in overruling Trussell's challenge for cause. Accordingly, the first assignment of error is overruled.

Manifest Weight of the Evidence

{¶27} In the second assignment of error, Trussell argues his jury convictions for rape and kidnapping are against the manifest weight of the evidence. Specifically, he attempts to attack T.R.'s credibility by claiming certain aspects of her testimony are inconsistent as to the rape and kidnapping offenses.

**{¶28}** In determining whether a conviction is against the manifest weight of the evidence, an appellate court functions as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. We review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* We note that our "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

**{¶29}** It is well established that the weight to give evidence and the credibility of witnesses are primarily for the trier of fact to assess. *State v. Dehass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. This court has held that "a defendant is not entitled to reversal on manifest weight grounds merely because certain aspects of a witness's testimony are not credible or were inconsistent or contradictory." *State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 45 (8th Dist.). "The decision whether, and to what extent, to believe the testimony of a particular witness is 'within the peculiar competence of the factfinder, who has seen and heard the witness.'" *Id.*, quoting *State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, ¶ 54.

**{¶30}** Trussell argues the jury lost its way in weighing the evidence presented by the state in support of his rape and kidnapping convictions. Specifically, he argues T.R.'s testimony as to these convictions was unreliable and lacking credibility. He

claims T.R. testified to "an exaggerated occurrence" of the incident and further argues "there is no evidence to corroborate her version of the events."

{¶31} In support of his manifest weight argument with regard to the kidnapping offense, Trussell attempts to attack T.R.'s credibility by claiming her testimony that he forced her to leave the house is inconsistent with her further testimony that he permitted her to get dressed, call her place of employment to report her absence from work, and leave her sons the telephone numbers of her father and older daughter. We find this argument unpersuasive. The jury also heard T.R. testify she felt forced to leave with Trussell because he threatened to have a gun in the bag he carried with him during the kidnapping and rape offenses.

{¶32} Trussell further argues T.R.'s statement that she was unable to leave the vehicle lacked credibility because she also testified he stopped the car at red lights and stop signs. This argument ignores T.R.'s further testimony that Trussell yanked her back in the car each time she attempted to exit. Trussell also contends T.R.'s testimony she saw no one while the car was parked at the RTA bus stop was incredulous because it was between 5 a.m. and 6 a.m. on a weekday. However, the jury also heard T.R. explain that the area in which Trussell parked the car was not close to the station.

{¶33} With regard to the rape offense, Trussell contends the jury should not have believed T.R.'s accusations because they also heard her testify that she and Trussell "had known each other for over twenty years," "were involved in a romantic relationship[,] and were residing together on the day of the incident." He points to the fact that T.R.

"reported to hospital personnel that she had consensual sex 96 hours prior to the alleged incident." We do not find this testimony to be in any way inconsistent or contradictory with T.R.'s testimony about the rape.

{¶34} The jury heard T.R.'s detailed testimony about the rape. She explained that after Trussell drove her home from the RTA station, she went inside, and sat on the couch in the front room. She got up and walked toward the door to leave the house, but Trussell told her "you ain't going nowhere" and slammed the door shut. T.R. went to sit on the couch, and Trussell forced her to perform oral sex despite her protestations. He then ordered her to take off her clothes. She testified that she told him no, but took her clothes off because he still had the backpack in which he threatened to have a gun. Trussell proceeded to vaginally rape T.R. She begged Trussell "please don't do this, I don't want to do this." T.R. testified that Trussell replied, "I don't give a f**k what you don't want to do, you're going to do what the f**k I told you to."

{¶35} Upon careful review of the record, we do not find that the jury lost its way and created a miscarriage of justice in convicting Trussell of the kidnapping and rape offenses. Accordingly, the second assignment of error is overruled.

Ineffective Assistance of Counsel

{¶36} In the third assignment of error, Trussell argues he was denied effective assistance of counsel because his trial counsel failed to subpoena surveillance video recordings that, he argues, could have been used to impeach the credibility of T.R.'s testimony.

**{¶37}** To establish ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced the defense. *State v. Hilliard*, 8th Dist. Cuyahoga No. 102214, 2016-Ohio-2828, ¶ 5, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

**{¶38}** The first element requires a showing that counsel made errors "'so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment.'" *State v. Benitez*, 8th Dist. Cuyahoga No. 98930, 2013-Ohio-2334, ¶ 26, quoting *Strickland* at 687. "It necessarily requires that when a defendant complains of the ineffectiveness of counsel's assistance, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'" *Id.*, quoting *Strickland* at 687-688. In evaluating the first element, we consider whether, in light of all the circumstances, counsel's performance was outside the wide range of professionally competent assistance. *State v. Hostacky*, 8th Dist. Cuyahoga No. 103014, 2016-Ohio-397, ¶ 6, citing *Strickland* at 690.

**{¶39}** With regard to the second element, the defendant must demonstrate there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at ¶ 27, quoting *Bradley* at 142. The second element requires a defendant to demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

**{¶40}** In *Strickland*, the United States Supreme Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. When evaluating an ineffective assistance claim, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). This court has held that trial tactics and strategies do not constitute a denial of effective assistance of counsel. *State v. Bell*, 8th Dist. Cuyahoga No. 105000, 2017-Ohio-7168, ¶ 23.

**{¶41}** At sentencing, Trussell complained to the trial court that his defense counsel failed to subpoena video surveillance footage as Trussell had requested. During trial, defense counsel asked T.R. on cross-examination if Trussell had stopped to purchase cigarettes when they were driving together during the incident. T.R. responded negatively. Trussell claims convenience store surveillance footage would show that he did stop during the incident. Defense counsel also asked T.R. if she had ever gone to a bank with Trussell. She testified that she had gone to a bank with Trussell when he had wanted to look into opening a bank account, but that she had stayed in the car. Trussell claims the bank surveillance footage would show that T.R. accompanied him inside the bank.

{¶42} Trussell argues these surveillance videos "could have been used to further bring in to question the credibility of T.R.'s testimony" and that he "was prejudiced by the failure of trial counsel to procure these video recordings." He further argues trial counsel's failure to subpoena the surveillance video footage cannot be justified as a reasonable trial tactic because, "counsel had nothing to lose and everything to gain."

{¶43} However, in making this argument, Trussell does not demonstrate that counsel's performance was deficient or that counsel's actions prejudiced his defense. In light of all the circumstances, we do not find that counsel's performance in this case was outside the wide range of professionally competent assistance. Indeed, counsel's decision not to pursue the surveillance videos was debatably a trial tactic _ a decision to focus defense resources and argument in a different manner than Trussell would have preferred.

{¶44} Ultimately, we do not find that trial counsel's failure to subpoena the surveillance videos prejudiced Trussell. The videos are not in the record. Thus, we do not know whether they support Trussell's version of events. Assuming, arguendo, the surveillance video did show that Trussell stopped at a store during the kidnapping, we do not find there exists a reasonable probability this evidence would have affected the jury's verdict on the kidnapping count. The state established threat of force through T.R.'s testimony that Trussell claimed to have a gun in the bag he carried, the fear of which compelled her to get in the car with him. Moreover, Trussell's contention that T.R. once went to a bank with him is not relevant to the elements of any of his convictions.

Likewise, we do not find a reasonable probability that had the bank video footage been introduced it would have altered the outcome of the trial.

**{¶45}** Based on the foregoing, we do not find that Trussell was prejudiced by trial counsel's failure to subpoena the requested surveillance videos. Accordingly, the third assignment of error is overruled.

**{¶46}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
LARRY A. JONES, SR., J., CONCUR